**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**B. C. HAWK CHEVROLET, INC., Respondent.**

No. 77–1346.

United States Court of Appeals, Ninth Circuit.

Sept. 21, 1978.

John D. Burgoyne (argued), Edmund D. Cooke, Jr., Atty., Washington, D. C., for petitioner.

Warren C. Ogden (argued), Bellevue, Wash., for respondent.

Before SNEED and TANG, Circuit Judges, and SCHNACKE *, District Judge.

TANG, Circuit Judge.

The National Labor Relations Board (Board) has ordered B. C. Hawk Chevrolet, Inc. (Company) to cease and desist from 1) refusing to honor the collective bargaining contract signed on November 12, 1974 with Local Lodge 289, International Association of Machinists and Aerospace Workers, AFL–CIO (Union), 2) refusing to recognize the Union, 3) coercively polling its employees about their sympathies, 4) informing its employees that benefits were initiated to

---

* Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

show that the employees could do as well or better without Union representation. The Board also ordered the Company to implement the contract retroactively and make the employees whole, and to post notices. The Board's order is published at 226 N.L.R.B. No. 82. The Board seeks enforcement of its order; this Court has jurisdiction under 29 U.S.C. § 160(e).

FACTS:

In August, 1974, the Company acquired an automobile dealership in Issaquah, Washington, formerly operated as Charlie Brown Chevrolet. The Union had had a bargaining relationship with Charlie Brown Chevrolet for several years; the last contract expired two months before the Company acquired the business.

In September, 1974, Union Business Agent Dankel visited the Company and spoke to Jay Owens, the general manager. Dankel stated that two of the three mechanical employees were Union members and that he would like to have an agreement with the Company. The meeting ended without an agreement.

Dankel and Owens met again on November 11, 1974. Owens insisted that he needed time to "get his feet on the ground" and was not yet ready for a union contract. Dankel was concerned that if no contract were signed, the Union might lose its majority through turn-overs and new hires. The result was that on November 12, 1974, Owens and Dankel signed a collective bargaining contract that was to become effective on May 1, 1975.

Owens claims that the contract was accompanied by an oral condition that the contract would not go into effect if the employees should decide against union representation before the effective date. Dankel contends no such agreement was made. The Company also claims that the Union did not represent a majority of the Company's employees on November 12, 1974.

During February or March of 1975, the Company began various benefit programs for its employees including medical, dental, pension and bonus plans. Company Service Manager Wayne Barton told employees that the benefits were instituted to demonstrate "that the Company could do as well as, or better than the Union."

On April 9, 1975, the Company held a meeting of its employees to determine if the employees wished to be represented by the Union. Shop Foreman Brook presided. A company receptionist, Griffin, took notes. Barton also attended though he left before the vote was taken. Brook presented the Company's arguments against the Union, and Rodney Luther, also a supervisor, presented arguments in favor of the Union. A vote was taken by show of hands; the Union was defeated five to one.

The Company never made payments to the Union's Health and Welfare Trust Funds as required under the contract. The Union brought unfair labor practice charges on September 8, 1975, claiming the Company had violated § 8(a)(1) and (5) of the Act [29 U.S.C. § 158(a)(1) and (5)] by repudiating the contract signed November 12, 1974, refusing to recognize the Union, coercively polling the employees, and granting benefits to discourage Union membership. A hearing was held December 16, 1975. The administrative law judge found the Company in violation of the Act. The Board affirmed. The Board now seeks enforcement of its order.

ANALYSIS:

The Company is charged with unfair labor practices which fall in three broad areas: repudiating the contract, undermining Union support by granting benefits, and coercively polling the employees. Each will be examined separately.

I. Contract Repudiation

The Company admits that it executed a contract on November 12, 1974 and has refused to honor that contract. Normally, this would be a violation of § 8(a)(5) of the Act. The Company defends its actions on two grounds: 1) that the contract was subject to an oral condition that the employees

not decide against union representation before the effective date of the contract, and 2) that the Union did not represent a majority of the employees at any time.

█ The administrative law judge found Dankel's testimony concerning the absence of an oral condition credible, while Owen's testimony that the condition had been agreed on was not. The judge noted Owens' testimony was supported by Barton's, but still felt that Dankel's version was more accurate. The administrative law judge based this finding on the demeanor of the witnesses and on the notion that it would have been pointless for the document to have been executed with such a vital contingency outstanding, and that a person with Owens' business experience would have insisted on the condition being written down. The Board affirmed the administrative law judge on this point.

This court may interfere with the Board's credibility determinations only if a clear preponderance of the evidence convinces us that they are incorrect. *N.L.R.B. v. Western Clinical Laboratory, Inc.*, 571 F.2d 457 (9th Cir. 1978). *N.L.R.B. v. R. O. Pyle Roofing Co.*, 560 F.2d 1370 (9th Cir. 1977). The fact that two witnesses testified to one version of the facts, while only one witness testified to the version credited by the administrative law judge is not sufficient to counterbalance the administrative law judge's weighing of the demeanor of the witnesses, and his evaluation of the practicalities of the situation. We decline to upset this credibility finding.

█ In regard to the second defense there is little in the record as to whether a majority of the employees supported the Union or not in November, 1974. The Company did not request Board certification nor a card check, as it could have done. The Board contends that it is impossible at this time to determine whether the Union was supported by a majority of the employees when the contract was signed, but that such a determination is in any event unnecessary because this defense is time-barred under

§ 10(b) of the Act [29 U.S.C. § 160(b)] and also by the presumption of majority status during the first year after recognition. The Board therefore refused to accept evidence relating to this defense in the Board proceeding.

Section 10(b) provides that an unfair labor practice charge must be brought within six months of the alleged unfair labor practice. As the Board views this case, the Company is attempting to defend against a charge of refusing to bargain by asserting that the signing of the contract was itself an unfair labor practice. If the signing was an unfair labor practice, it occurred on November 12, 1974, and no unfair labor practice charges were filed until September 8, 1975. Therefore, in the Board's view, this defense is time-barred by § 10(b).

Section 10(b) literally applies only to the filing of complaints. However, the Supreme Court has held that it extends to all evidence of unfair labor practices, *Local Lodge No. 1424 etc. v. N.L.R.B. (Bryan Mfg. Co.)*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) and this court has held that § 10(b) bars defenses based on unfair labor practices as well. *N.L.R.B. v. Tahoe Nugget, Inc.*, 584 F.2d 293 (9th Cir. 1978); *N.L.R.B. v. Tragniew, Inc.*, 470 F.2d 669 (9th Cir. 1972); *Lane-Coos-Curry-Douglas Counties Bldg. & C.T.C. v. N.L.R.B.*, 415 F.2d 656 (9th Cir. 1969).

It has been suggested that the six month period of § 10(b) should be held to run from the date the contract became effective rather than from the date it was executed. To do so would be to ignore the holding in *Bryan Mfg. Co., supra; Tahoe Nugget, Inc., supra,* and *Tragniew, Inc., supra.* If the execution of the contract was an unfair labor practice, that unfair practice occurred on November 12, 1974. Nothing in this record gives any indication why the Company could not have brought charges earlier, as it was certainly aware of the contract's execution and any possible defects that may have existed.[1]

1. We express no opinion on whether the § 10(b) time bar would apply in this fashion if the employees had brought charges under § 8(a)(2) or § 8(b)(2) and claimed no knowledge

■ Two additional grounds also exist for supporting the Board's decision. A union that is certified or recognized by the employer as the employees bargaining representative is presumed to retain that status for at least one year and the employer may not rebut the presumption during that period. *Brooks v. N.L.R.B.*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); *Tahoe Nugget, Inc., supra; N.L.R.B. v. Lee Office Equipment*, 572 F.2d 704 (9th Cir. 1978); *N.L.R.B. v. Denham*, 469 F.2d 239 (9th Cir. 1972) *vacated on other grounds*, 411 U.S. 945, 93 S.Ct. 1925, 36 L.Ed.2d 407. The one year period can be considered to run, at the earliest, from the time when Dankel first approached Owens in September, 1974; it had not expired when the Company repudiated the contract in May, 1975.[2]

■ Even if the § 10(b) time bar and the presumption of majority status were not applicable here, the Board was still justified in refusing to hear this defense. As shown *infra*, the Company has committed independent unfair labor practices which tended to undermine union support. It would be inequitable to allow the Company to raise the issue of the Union's majority status when the Company has actively attempted to destroy that status. To allow this defense would be to condone the independent unfair labor practices. We hold that the Board's decision that the Company violated § 8(a)(1) and (5) by repudiating the contract is supported by substantial evidence.

II.  Granting of Benefits

■ It is well established that it is a violation of § 8(a)(1) to grant (or promise) benefits for the purpose of undermining union support, or inducing dissatisfaction with the union. *N.L.R.B. v. Exchange Parts Co.*, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964); *N.L.R.B. v. Miller Redwood Co.*, 407 F.2d 1366 (9th Cir. 1969). In this case, there was testimony from the shop foreman, Brook, that Barton had said

to him, in the presence of other employees, that the benefit programs the company had instituted would counteract the Union's and would be as good or better than the Union programs. Barton denied this in his testimony. We see no reason to upset the Board's finding on this issue.

III.  Coercive Polling

■ An employer may poll his employees about their union sympathies, but he must observe certain safeguards in order to avoid violation of § 8(a)(1). These safeguards were set forth in *Struksnes Construction Co.*, 165 N.L.R.B. 1062 (1967) and approved by this Court, *N.L.R.B. v. Super Toys, Inc.*, 458 F.2d 180 (9th Cir. 1972). Specifically, the employer must, 1) conduct the poll to determine the truth of the union's claim of majority, 2) communicate this purpose to the employees, 3) give assurances against reprisals, 4) conduct the poll by secret ballot, and 5) not engage in other unfair labor practices or otherwise create a coercive atmosphere.

■ The poll here was defective. No assurances against reprisal were given, the poll was by show of hands (not secret ballot), and other unfair practices had been committed. Further, the presence of Barton and the receptionist made the atmosphere coercive. We find therefore that the Board should be affirmed on this point.

CONCLUSION:

The Board's findings are supported by substantial evidence in the record as a whole. The Board's order is therefore ENFORCED.

---

of the contract until after the effective date. That case is not before us.

**2.** We stress that this presumption would not prevent the employees from bringing unfair labor practice charges based on the contract.