689 F.2d 1339
 111 L.R.R.M. (BNA) 2665, 95 Lab.Cas. P 13,818
 GLAZIERS & GLASSWORKERS LOCAL UNION # 767; Kendall J.
Bartlett, Trustee for and on behalf of Glaziers &
Glassworkers Local # 767 Health &
Welfare Trust Fund, et al.,
Plaintiffs-Appellants,
v.
CUSTOM AUTO GLASS DISTRIBUTORS, a Nevada corporation, and
Sierra Glass Service, Inc., a Nevada corporation,
Defendants-Appellees.
 No. 79-4199.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 1, 1982.
Decided Oct. 12, 1982.
 
 James C. Van Winkle, Reno, Nev., for plaintiffs-appellants.
 Lawrence V. Brown, Jr., Belmont, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before MERRILL and HUG, Circuit Judges, and WILKINS*, District Judge.
 HUG, Circuit Judge:
 
 
 1
 Glaziers & Glassworkers Local 767 and the trustee for Local 767's Health and Welfare Trust Fund (collectively "the Union") brought this action under section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, against Custom Auto Distributors and Sierra Glass Service, Inc. (collectively "the Employers"). The Union alleges that the Employers failed to comply with the terms of a collective bargaining agreement, and it seeks an accounting for unpaid benefits.
 
 
 2
 The major issue in this appeal is whether the Employers may validly assert as a defense to a section 301 action that the collective bargaining agreement was unlawful because the Union did not represent a majority of the covered employees at the time the agreement was executed. The district court held that the Union had the burden of proving that it represented a majority of the covered employees at the time the agreement was executed. Finding that the Union failed to carry that burden, the court dismissed the action under Fed.R.Civ.P. 41(b). We reverse.
 
 
 3
 * FACTS
 
 
 4
 On August 1, 1969 the Employers and the Union entered into a collective bargaining agreement covering all of the glaziers and glassworkers employed by the Employers. This agreement continued for three years. A new agreement with the same provisions was executed by the Union and the Employers on August 1, 1972 for another three-year term. The Union having been voluntarily recognized as exclusive bargaining agent for all the glaziers and glassworkers, no certification by the National Labor Relations Board was sought or required. The recognition section of the collective bargaining agreement provided:
 
 
 5
 The Employers shall recognize Glaziers and Glass Workers, Local Union # 767, as the exclusive representative for the purpose of collective bargaining for all of the glaziers and glass workers employed by the Employers within the territorial jurisdiction of the Local Union.
 
 
 6
 The Employers contended that each of them operated two separate types of establishments, a "storefront" shop and an "auto-glass" shop. In the "storefront" shop they acted as subcontractors in commercial construction for the placing of glass and windows in new buildings; in the "auto-glass" shop they replaced broken automotive glass and residential window glass. The Employers did not apply the terms of the agreement to the "auto-glass" shop employees.
 
 
 7
 On March 12, 1974, the Union notified the Employers that they had violated the agreement by failing to apply its terms to all the glaziers and glassworkers including those in the "auto-glass" shops. After various efforts to secure the Employers' compliance failed, the Union, pursuant to section 301, filed suit in United States District Court seeking to enforce the agreement.
 
 
 8
 Shortly after the Union brought its action, several glaziers and glassworkers then employed by Sierra Glass Service filed a charge with the National Labor Relations Board ("NLRB"), alleging that the Union had never been their authorized bargaining representative and it, therefore, had committed an unfair labor practice by suing to enforce the agreement on their behalf. The district court stayed the Union's action pending the outcome of proceedings before the NLRB on the unfair labor practice charge.
 
 
 9
 The administrative law judge ("ALJ"), who conducted the hearing on the charge, concluded that the Union's section 301 suit did not constitute an unfair labor practice. He also found that the collective bargaining agreement, by its terms, covered all of Sierra Glass's glaziers and glassworkers and that Sierra Glass's voluntary recognition of the Union created a presumption, which it had failed to rebut, that the Union was authorized by the majority of its employees as their bargaining agent. The NLRB adopted the ALJ's findings and dismissed the unfair labor practice charge. This court affirmed the NLRB's dismissal of the charge upon the narrow ground that the mere filing of a suit in district court by the Union, asserting a breach of the collective bargaining agreement, did not constitute an unfair labor practice. Bergman v. NLRB, 577 F.2d 100 (9th Cir. 1978).
 
 
 10
 When the section 301 action resumed, the district court declined to give collateral estoppel effect to the NLRB's findings regarding the Union's presumed majority status. At the conclusion of the Union's case, the Employers filed a motion for dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure on the ground that the Union had failed to prove that it was the authorized bargaining agent of the majority of the employees in question. The court granted the motion, holding that the Union had the burden of proving that it represented the majority of the Employers' glaziers and glassworkers on the date the agreement was executed and had failed to carry this burden.
 
 
 11
 On appeal, the Union contends first, that the court erred in refusing to give collateral estoppel effect to the NLRB's finding of presumed majority status; and second, that the court erred in requiring it to prove majority status as a prerequisite to enforcement of the collective bargaining agreement.
 
 II
 COLLATERAL ESTOPPEL
 
 12
 Under the doctrine of collateral estoppel, "an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in subsequent cases based on a different cause of action but involving a party to the prior litigation." Johnson v. Mateer, 625 F.2d 240, 243 n.5 (9th Cir. 1980). A determination of fact by the National Labor Relations Board will be accorded collateral estoppel effect if it is made in a proceeding fully complying with procedural and substantive due process, and if the findings are upon material issues supported by substantial evidence. Paramount Transport Systems v. Chauffeurs, Etc., Local 150, 436 F.2d 1064 (9th Cir. 1971); see also NLRB v. Heyman, 541 F.2d 796, 802 (9th Cir. 1976) (Kennedy, J. concurring).
 
 
 13
 First, it is obvious that the NLRB's findings could have no preclusive effect on the question of the Union's representation of the employees of Custom Auto Glass, because the NLRB's proceeding concerned only Sierra Glass.
 
 
 14
 We also conclude that collateral estoppel is not applicable to the question of the Union's representation of Sierra Glass's employees. While there is no indication that the NLRB proceeding was not a full and fair hearing, on appeal this court did not reach the issue of whether the Union represented a majority of the employees; we found it unnecessary to do so because we found that the mere filing of a law suit by the Union alleging the breach of a collective bargaining agreement did not constitute an unfair labor practice. See Bergman v. NLRB, 577 F.2d at 103 n.5. Thus, the NLRB's finding of majority status was not a "necessary determination of an issue," Johnson v. Mateer, 625 F.2d at 243 n.5, nor was it "essential to the judgment," United States v. Bejar-Matrecios, 618 F.2d 81, 83 (9th Cir. 1980). Accordingly, the district court correctly declined to apply the doctrine of collateral estoppel to bar litigation on the issue of the Union's status as the majority representative of Sierra Glass's employees.
 
 III
 MAJORITY STATUS
 
 15
 The Employers contend that the Union must prove that it represented a majority of the employees covered by the 1972 collective bargaining agreement. The Union, on the other hand, contends that lack of majority status cannot be raised as a defense in this proceeding.[1] The Employers assert that enforcement of a bargaining agreement between an employer and a union that lacked representational status at the time the agreement was signed would serve to deprive employees of their right, under Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157, to choose their own bargaining agent or to refrain from any Union activity whatsoever. Thus, the Employers argue that, absent a showing that the Union represented the majority of their employees on the date of execution, the contract is unenforceable. The issue is whether an employer that voluntarily recognizes and enters into a collective bargaining agreement with a union that claims majority status may assert two years later, as a defense to a section 301 action, that the union lacked majority status when the contract was executed.
 
 
 16
 In assessing the argument of the Employers, we must first consider whether this issue is preempted from determination by the district court under the doctrine of primary jurisdiction. As applied in a labor relations context, the doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board. The foundation of this doctrine was established by the Supreme Court in Gardner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), and San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Garmon provided the generally accepted guideline for determining the extent to which the doctrine of primary jurisdiction preempts both state and federal courts from independently deciding questions of national labor policy. The Court emphasized that unfair labor practices should be left in the first instance to the NLRB. Id. at 244-45, 79 S.Ct. at 779.
 
 
 17
 However, Congress also granted, in section 301 of the Labor-Management Relations Act, jurisdiction to the district courts over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.[2] The Supreme Court held in Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), that the primary jurisdiction doctrine did not preempt a court's jurisdiction over a section 301 action for a breach of contract that was also an unfair labor practice. The Court in Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), stressed that the exception to the primary jurisdiction doctrine provided by section 301 was designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement.
 
 
 18
 In Beriault v. Local 40, Super Cargoes & Checkers of I. L. & W. U., 501 F.2d 258 (9th Cir. 1974), we construed the extent of the preemption applicable to section 301 actions as mandated by the primary jurisdiction doctrine of Garmon and Lockridge. We distinguished between alleged unfair labor practices that involved interpretations of the terms of the contract as opposed to those that were an attack on the validity of the contract itself. The former were generally considered to be within the jurisdiction of the district court as well as the NLRB, whereas the latter were within the primary jurisdiction of the NLRB.
 
 
 19
 We have held, in some instances, that even the interpretation and enforcement of the terms of a collective bargaining agreement are within the primary jurisdiction of the NLRB and not within the section 301 jurisdiction. In Local No. 3-193 International Woodworkers of America v. Ketchikan Pulp Company, 611 F.2d 1295 (9th Cir. 1980), we held that litigation of a representation issue in the first instance in a section 301 action conflicted with a strong policy of judicial deference to initial determination by the NLRB of representation issues, such as the selection of the exclusive bargaining agent and the appropriate bargaining unit.
 
 
 20
 The Supreme Court recently held that the doctrine of primary jurisdiction does not preclude the district court from determining whether a provision of a collective bargaining agreement is void and unenforceable because it violates section 8(e) of the NLRA, 29 U.S.C. § 158(e) (hot cargo clause). Kaiser Steel Corp. v. Mullins, --- U.S. ----, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). The Court stated:
 
 
 21
 As a general rule, federal courts do not have jurisdiction over activity which "is arguably subject to § 7 or § 8 of the (NLRA)," and they "must defer to the exclusive competence of the National Labor Relations Board." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (79 S.Ct. 773, 779, 3 L.Ed.2d 775) (1959). See also Garner v. Teamsters, 346 U.S. 485, 490-491 (74 S.Ct. 161, 165-166, 98 L.Ed. 228) (1953). It is also well-established, however, that a federal court has a duty to determine whether a contract violates federal law before enforcing it....
 
 
 22
 Section 8(e) provides not only that "it shall be an unfair labor practice" to enter an agreement containing a hot cargo clause, but also that "any contract or agreement entered into heretofore or hereafter containing (a hot cargo clause) shall be to such extent unenforceable and void." This strongly implies that a court must reach the merits of an illegality defense in order to determine whether the contract clause at issue has any legal effect in the first place.
 
 
 23
 Id. --- U.S. at ----, 102 S.Ct. at 859, 70 L.Ed.2d at 843.[3]
 
 
 24
 In the instant case, the Employers are not seeking to interpret the terms of a collective bargaining agreement, but rather to avoid the entire agreement. The thrust of their contention is that both the Employers and the Union committed an unfair labor practice by recognizing the Union as the exclusive bargaining agent and entering into a collective bargaining agreement when the Union did not represent the majority of the employees. As we emphasized in Ketchikan, representation issues are particularly a matter to be determined in the first instance by the NLRB. This is quite distinct from the situation in Mullins, where the Court held that the district court could properly interpret a provision of a contract to determine if it was void under section 8(e) of the NLRA.
 
 
 25
 The Employers cite a remark in NLRB v. Iron Workers, 434 U.S. 335, 351-52, 98 S.Ct. 651, 660-61, 54 L.Ed.2d 586 (1978) in support of their contention that the issue of representation could be litigated in the district court. The remark was clearly dictum; it was made as an aside illustration to emphasize a different point.[4] The question of primary jurisdiction was not in issue. We do not consider this remark of the Court, in an entirely different context, to be binding or afford guidance on the issue here.
 
 
 26
 At the time of the commencement of this action, the Employers were precluded from bringing an unfair labor practice complaint before the NLRB on the grounds that the Union had misrepresented its majority support, because section 10(b) of the NLRA, 29 U.S.C. § 160(b), provides that such complaints must be brought within six months of the occurrence. We have held that section 10(b) also bars defenses based on unfair labor practices. NLRB v. Tahoe Nugget, Inc., 584 F.2d 293, 298, 302 (9th Cir. 1978), cert. denied, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979); NLRB v. B. C. Hawk Chevrolet, Inc., 582 F.2d 491, 494 (9th Cir. 1978).
 
 
 27
 The action that some employees of Sierra Glass Service brought before the NLRB, two years after the execution of the collective bargaining agreement, sought to raise the issue of majority status; however, the only act of the Union which could, at that time, be asserted as an unfair labor practice was the act of filing the law suit to enforce the collective bargaining agreement. We held in Bergman v. NLRB, 577 F.2d 100 (9th Cir. 1978), that the filing of the law suit could not constitute an unfair labor practice and, therefore, affirmed the order of the NLRB dismissing the complaint.
 
 
 28
 We also observe that even in a timely assertion of lack of majority status in a complaint or defense before the NLRB, the Employers would have been confronted with a presumption of the Union's majority support. A presumption of majority support arises from the voluntary recognition of the union, which cannot be rebutted by the employer for one year. When, as in this case, an employer and a union execute a collective bargaining agreement, the presumption cannot be rebutted by the employer for the term of the contract (not to exceed three years). NLRB v. B. C. Hawk Chevrolet, Inc., 582 F.2d at 495; Pioneer Inn Associates v. NLRB, 578 F.2d 835, 838 (9th Cir. 1978); see Pick-Mt. Laurel Corporation v. NLRB, 625 F.2d 476, 480 (3rd Cir. 1980).
 
 
 29
 Were we to permit the Employers to raise the issue of majority support as a defense in this action, it would permit the Employers to circumvent the time limitations and presumptions that are designed for application by the NLRB in determining representation issues, which are at the heart of labor-management relations. Therefore, we conclude that the Employers are precluded from asserting, as a defense to the section 301 action, that the Union lacked majority status at the time of the execution of the collective bargaining agreement because of the preemption of this issue under the primary jurisdiction doctrine. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 
 30
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Philip C. Wilkins, Chief United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The Union stipulated to a pretrial order that identified majority status as the ultimate issue for trial. The Employers contend that by this stipulation, the Union waived its right to contest the materiality of majority status and that we should therefore decline to consider the question. We disagree. An appellant's concession of an issue in the trial court will ordinarily foreclose him from raising that issue on appeal. Telco Leasing Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir. 1980). However, the Union raised this issue in its opposition to the Employers' motion to dismiss and the district court considered the Union's contention on the merits. Therefore, the Employers will not be prejudiced by our consideration of the Union's contentions regarding majority status notwithstanding the stipulated pretrial order. See United States v. Gabriel, 625 F.2d 830, 832 (9th Cir. 1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981)
 
 
 [2]
 Section 301 of the NLRA, 29 U.S.C. § 185(a), provides in pertinent part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [3]
 The Court's holding in Mullins reversed a holding of the District of Columbia Circuit, Mullins v. Kaiser Steel Corporation, 642 F.2d 1302 (D.C.Cir.1980), that had held, along with Ninth Circuit cases Waggoner v. R. McGray, Inc., 607 F.2d 1229 (9th Cir. 1979) and Orange Belt District Council of Painters v. Maloney Specialties, Inc., 639 F.2d 487 (9th Cir. 1980), that even the question of the legality of a provision under section 8(e) was within the exclusive jurisdiction of the NLRB and beyond the authority of the district court to adjudicate
 
 
 [4]
 In Iron Workers, the Court was concerned with a prehire agreement under Section 8(f) of the NLRA, 29 U.S.C. § 158(f). The issue was whether the section 8(f) prehire agreement justified picketing for recognitional purposes by an uncertified union which concededly did not represent a majority of the employees. The Court affirmed the NLRB, holding that the picketing was not justified and constituted an unfair labor practice. The Court viewed a prehire agreement, which is authorized exclusively in the construction industry, as merely a preliminary step which contemplates establishing majority support before a full bargaining relationship is established. The Court held that section 8(f) did not authorize picketing to enforce prehire agreements where the union had not achieved majority support
 The union argued that this interpretation of section 8(f) prehire agreements made them meaningless and furthermore conflicted with Retail Clerks v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). The Court in Lion Dry Goods had held that the district court had jurisdiction under section 301 to entertain suits on contracts between an employer and a minority union, including those involving section 8(f) prehire agreements.
 In response to this argument, the Court pointed out that the Lion Dry Goods opinion was speaking about jurisdiction and did not address the question whether the contract was enforceable. The Court then illustrated this point by stating:
 That a court has jurisdiction to consider a suit on a particular contract does not suggest that the contract is enforceable. It would not be inconsistent with Lion Dry Goods for a court to hold that the union's majority standing is subject to litigation in a § 301 suit to enforce a § 8(f) contract, just as it is in a § 8(a)(5) unfair labor practice proceeding, and that absent a showing that the union is the majority's chosen instrument, the contract is unenforceable.
 434 U.S. at 351-352, 98 S.Ct. at 660-661.
 In light of the context of the remark, we do not consider it to be a binding or guiding principle on the issue of primary jurisdiction. In Iron Workers, the Court was dealing with a decision made by the NLRB and was not concerned with primary jurisdiction. The Court was illustrating why Lion Dry Goods's finding of jurisdiction over a section 8(f) agreement did not mandate a finding that it was enforceable. Moreover, the presumptions and consequences that flow from a section 8(f) prehire agreement are very different from those of an ordinary collective bargaining agreement. See Precision Stripping, Inc. v. NLRB, 642 F.2d 1144 (9th Cir. 1981). See also Contractors, Etc. v. Associated Wrecking Co., 638 F.2d 1128 (8th Cir. 1981), in which the court held some of the provisions of a section 8(f) prehire agreement to be enforceable despite the failure of the union to achieve majority status.