**MINGTREE RESTAURANT, INC., dba Forbidden City Restaurant, Petitioner/Cross-Respondent**

v.

**The NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner,**

**Hotel, Motel, Restaurant Employees and Bartenders Local 20, International Union, AFL–CIO, Charging Party.**

Nos. 82–7773, 83–7119.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1983.

Decided July 2, 1984.

O.W. Hollowell, Hollowell & Pisto Federal Way Wash., for petitioner/cross-respondent.

Paul Spielberg, N.L.R.B. Washington, D.C., for respondent/cross-petitioner.

Before WRIGHT, ANDERSON and FLETCHER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Mingtree Restaurant (Employer) petitions for review of a decision of the National Labor Relations Board (Board) holding that the Employer violated section 8(a)(1) of the National Labor Relations Act (Act), 29 U.S.C. § 158 (1982), by polling its employees, and section 8(a)(5) of the Act by refusing to bargain with the incumbent union. The Board ordered the Employer to refrain from polling or otherwise interrogating its employees to ascertain their union views unless it had additional objective evidence that the union had lost its majority support. The Board further ordered the Employer to resume collective bargaining. For the reasons stated below, we deny the Board's cross-petition for enforcement of its order.

## I. FACTS

The Employer voluntarily recognized the Hotel, Motel, Restaurant Employees and Bartenders International Union, Local 20, AFL–CIO (Union) in 1971 and subsequently executed a succession of "me-too" collective-bargaining agreements negotiated between the Union and the Pierce County Restaurant Owners Association. These agreements contained a union security clause requiring compulsory union membership or discharge and mandatory employer contributions to trusts maintained for employee health insurance and pensions.

After expiration of the most recent agreement on August 1, 1980, the parties began negotiating a new contract. They suspended negotiations in September pending resolution of a representation petition filed by the management of a restaurant which was a party to the negotiations but not involved in this action. The Employer filed a representation petition in November, which it withdrew after being advised by the Regional Director that the petition would be dismissed because the evidence was insufficient to demonstrate the union's loss of majority support. Thereafter, the Employer hired a certified public accounting firm to conduct a secret ballot poll to determine the union's status. Out of 26 employees eligible to vote, eight voted for the union, fourteen voted against it, and four did not vote. The Employer then withdrew recognition from the union and refused to resume bargaining.

The Union's unfair labor practice charge was tried on stipulated facts with the parties waiving a hearing. The Board affirmed the finding of the Administrative Law Judge that the poll was unlawful because the Employer "did not have sufficient objective considerations upon which to base a reasonable doubt of the union's majority status prior to conducting the poll."

## II. ISSUE

What standard must an employer meet before it may poll its employees about their support of an incumbent union?

## III. DISCUSSION

Once a union has been certified or voluntarily recognized, it enjoys a presump-

tion of continued majority status. *N.L.R.B. v. Tahoe Nugget, Inc.*, 584 F.2d 293, 297 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). This presumption is irrebuttable for a reasonable time, usually one year, and is rebuttable thereafter. *Id.* An employer may rebut the presumption and withdraw recognition from the union if it shows, by clear, cogent, and convincing evidence that the union was in the minority or that the employer had a good faith reasonable doubt of majority support. *Id.* "[T]he evidence presented to establish reasonable good faith doubt, individually or cumulatively, must unequivocally indicate that union support [has] declined to a minority." *N.L.R.B. v. Silver Spur Casino*, 623 F.2d 571, 579 (9th Cir.1980), *cert. denied*, 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981).

Given this strict interpretation of good faith doubt, there is little difference between the evidence necessary to prove a union's minority in fact and the employer's reasonable good faith doubt. The results of the poll, however, clearly showed that the Union no longer enjoyed the support of a majority of employees. Nevertheless, the Board, in rejecting the Employer's claim of good faith doubt, held that the taking of the poll was itself an unfair labor practice and the other evidence of employee dissatisfaction with the Union was insufficient to rebut the presumption.

The Board relied on *Montgomery Ward & Co., Inc.*, 210 N.L.R.B. 717 (1974), in which an employer was found to have violated the Act by conducting a poll without sufficient objective considerations to warrant a reasonable doubt of the union's majority status. Sufficient objective considerations for a private poll, concluded the Board, must be such as would occasion the grant of an employer's petition for a Board election. *Montgomery Ward*, 210 N.L.R.B. at 724. The criteria for a Board election are the same as those that determine whether the employer may withhold recognition from an incumbent union. *Id.* Thus, under the *Montgomery Ward* rule, the same evidentiary standard applies to an employer's conducting its own poll, suc-

cessfully petitioning the Board for an election, or withdrawing recognition from the union. By the Board's reasoning, an employer in doubt of the union's majority status would be allowed to take a poll only when it had no actual need to do so, that is, when it already had sufficient objective evidence to justify withdrawal of recognition.

Although the *Montgomery Ward* rule is tantamont to an outright prohibition of employer-sponsored polls, the Board maintains that the rule is necessary to preserve the stability of the bargaining relationship. Adopting a lower standard for employer polling, the Board contends, poses a significant danger to employees' rights in that it would encourage polling conducted to weaken unions rather than to test real doubts of majority status.

While we appreciate the Board's concerns and "give 'considerable deference' to the Board's expertise in construing and applying the labor laws," *Machinists Local 1327 v. N.L.R.B.*, 725 F.2d 1212, 1215 (9th Cir.1984) (quoting *Bureau of Alcohol, Tobacco & Firearms v. F.L.R.A.*, — U.S. ——, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), we find its position to be untenable. In *Struksnes Construction Co., Inc.*, 165 N.L.R.B. 1062 (1967), the Board adopted guidelines for employer polling of employee union sentiment during a union's initial demand for recognition:

(1) the purpose of the poll is to determine the truth of a union's claim of majority,

(2) this purpose is communicated to the employees,

(3) assurances against reprisal are given,

(4) the employees are polled by secret ballot, and

(5) the employer has not engaged in unfair labor practices or otherwise created a coercive atmosphere.

165 N.L.R.B. at 1063. The Employer in this case conducted its poll in strict conformance with the *Struksnes* guidelines.

In refusing to extend *Struksnes* to post-recognition situations, the *Montgomery* Board stated that in the initial organizing stage, employee polling "may reflect a good faith desire to determine the validity of a union's initial claim of majority, but that can almost never be the case with respect to an employer-sponsored election or poll to test the majority status of an incumbent union." 210 N.L.R.B. at 725. Since an incumbent union enjoys a presumption of majority status, continued the Board, extending *Struksnes* "would contravene a basic objective of the Act, that is, guaranteeing employees the right to bargain collectively through representatives of their own choosing, if the employer is given an *unrestricted* license to search for proof of the union's loss of majority ...." *Id.* at 724 (emphasis added).

■ We disagree with the Board's contention that only in the initial recognition stage may the employer have a good faith desire to ascertain the union's majority status. An employer commits an unfair labor practice if it refuses to bargain with a union that represents a majority of the employees or bargains with a union that does not have majority support. *Thomas Industries, Inc. v. N.L.R.B.*, 687 F.2d 863, 866 (6th Cir.1982). Although, if challenged, the concerned employer is aided by the presumption of majority status, the presumption may be rebutted.

Additionally, we believe the Board's fear of unbridled polling conducted for improper motives to be unfounded. The *Struksnes* guidelines do restrict the employer by prohibiting polling if the employer has "engaged in unfair labor practices or otherwise created a coercive atmosphere." *Struksnes*, 165 N.L.R.B. at 1063. In *Struksnes*, the Board stated that these guidelines, in the pre-recognition stage, would serve as a "warranty" to the employees that a poll would not have some unlawful object, contrary to the lawful purpose stated by the employer. *Id.* We see no reason why they would not serve just as well as a warranty in the post-recognition situation.

We are not persuaded by the Board's argument that the employer-sponsored poll is defective because it is conducted without the safeguards of a Board election. The Board has determined that the *Struksnes* procedures adequately protect employee interests in voting secrecy and assurance against employer reprisal in the organizational stage. Again, we see no reason why they would not afford as much protection after the union has been recognized.

The Board contends that employer-sponsored polls usurp a Board function. In the organizational phase, however, the employer may choose between a private poll or a Board-supervised election. After recognition of the union, these options, as a practical matter, are foreclosed since neither employer-petitioned Board elections nor private employer polls will be allowed unless the employer first produces other evidence sufficient to permit withdrawal of recognition.

We find it incongruous for the Board to grant the right to conduct polls of union sentiment during the crucial organizational period and effectively deny that right after the union has been recognized. While we appreciate the importance of maintaining stability in the bargaining relationship, we must also weigh the legitimate concern of the employer that it bargain only with the majority union. On balance, we find that polling that adheres to the *Struksnes* safeguards is an adjunct to, rather than a usurpation of, a Board function; it is an objective, minimally disruptive mechanism for obtaining evidence of the level of union support; and it enables the employer to avoid precipitous action, such as the withdrawal of recognition, when only less precise evidence is available.

■ This court has approved the use of polls complying with the *Struksnes* safeguards as a gauge of employees' union sentiment, *N.L.R.B. v. B.C. Hawk Chevrolet, Inc.*, 582 F.2d 491, 495 (9th Cir.1978); *N.L.R.B. v. Super Toys, Inc.*, 458 F.2d 180, 182–83 (9th Cir.1972); and, in dicta, their use in the incumbent union situation. *Pioneer Inn Associates v. N.L.R.B.*, 578 F.2d 835, 840 (9th Cir.1978). The Fifth and

Sixth Circuits have held that if the poll is conducted in accordance with *Struksnes*, the employer may poll its employees on a lesser showing of objective evidence than required by *Montgomery*. *N.L.R.B. v. A.W. Thompson, Inc.*, 651 F.2d 1141, 1145 (5th Cir.1981) (employer must also give notice to the union); *Thomas Industries, Inc. v. N.L.R.B.*, 687 F.2d 863, 867–69 (6th Cir. 1982). We believe that polling can be a useful and legitimate tool for the employer who is in sincere doubt of the union's majority status. We therefore hold, as did the Fifth and Sixth Circuits, that as long as the employer complies with the *Struksnes* conditions and procedural safeguards, it may poll its employees to determine their union sentiment if it has substantial, objective evidence of a loss of union support, even if that evidence is insufficient by itself to justify withdrawal of recognition, and if it has given the union notice of the time and place of the poll.

## IV. CONCLUSION

We grant the Employer's petition for review, deny the Board's petition for enforcement of its order, and remand to the Board for a determination of whether, under the standard announced in this decision, the Employer had sufficient objective evidence to poll its employees.