JOHN S. GRIFFITH CONSTRUCTION CO., a California corporation, Plaintiff,

v.

SOUTHERN CALIFORNIA CEMENT MASONS NEGOTIATING COMMITTEE, an unincorporated association; Cement Masons Local Union No. 893, an unincorporated association, Defendants.

No. CV 84–3546–ER(KX).

United States District Court, C.D. California.

Sept. 24, 1984.

Wayne A. Hersh, Hersh & Stoll, Newport Beach, Cal., for plaintiff.

Jeffrey L. Cutler, Davis, Frommer & Jesinger, Los Angeles, Cal., for defendants.

## MEMORANDUM DECISION

RAFEEDIE, District Judge.

Plaintiff, Griffith Construction Company, filed this action against defendants Southern California Cement Masons Negotiating Committee and Cement Masons Local Union No. 893 seeking a declaration that it had validly repudiated its pre-hire agreement ("PHA") with defendants and therefore was not obligated to defendants in any way under the terms of the PHA. Defendants moved that this Court dismiss this action for lack of subject matter jurisdiction, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1). Plaintiff contends that the Ninth Circuit decision *Todd v. Jim McNeff, Inc.*, 667 F.2d 800 (9th Cir.1982), *aff'd.* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), establishes jurisdiction to determine whether plaintiff validly repudiated its PHA before defendants achieved majority status. Plaintiff also asks this Court to impose sanctions upon defendants for bringing this motion.

## FACTUAL BACKGROUND

During January through October 1983, plaintiff was the owner/builder of a project in Glendale, California. Griffith had a construction contract with Stolte, Inc., to act as a general contractor on the project. In July, 1983, several unions, including the defendants, engaged in a strike action and picketed the Glendale site. All construction stopped. On July 13, 1983, plaintiff was advised that work could resume if it signed an interim agreement and removed Stolte as general contractor. Plaintiff signed the PHA with defendants on July

14, 1983. It had no employees and no other collective bargaining agreement with a construction union when it signed the PHA.

Work at the site resumed and plaintiff employed union members for a period of about three weeks. After this, Stolte, Inc., executed its own agreement with the union, returned to the project as general contractor, and employed union members. The construction project ended around November 1, 1983.

On November 1, 1983, plaintiff allegedly repudiated the PHA by a letter to defendant union. The union notified plaintiff that it felt the repudiation was ineffective.

On November 23, 1983, plaintiff petitioned the National Labor Relations Board ("NLRB"), Region 21 for an election to determine the status of the agreement between plaintiff and defendants—whether a majority of employees were members of or supported the union. The NLRB regional director dismissed the petition, deciding that plaintiff did "not currently employ any employees, nor has it employed employees during a representative period of time." Plaintiff appealed and the decision was upheld in the NLRB appeal process.

Plaintiff then filed this action for declaratory relief. Its complaint asserted that this Court has jurisdiction under both § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) and 28 U.S.C. § 1334.

Plaintiff has only relied upon the former basis in its opposition to this motion.

*Jurisdiction Under Section 301(a)*

Section 301(a) of the LMRA provides: Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a)

The Ninth Circuit has interpreted § 301 to include the "jurisdictional requisites"

that there be "(1) a contract; (2) a claim of violation; and (3) a 'between' employer and labor organization or a 'between' labor organizations element." *Alvares v. Erickson,* 514 F.2d 156, 161 (9th Cir.1975), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *accord McCauslin v. FMC Corp.,* 728 F.2d 1275 (9th Cir.1984) ("To establish district court jurisdiction pursuant to § 301 of the LMNR, a plaintiff must allege only that a contract between an employer and a union has been breached."); *Painters and Decorating Contractors Ass'n v. Painters and Decorators Joint Comm.,* 707 F.2d 1067, 1070 (9th Cir.1983) ("To assert jurisdiction under § 301(a), a litigant must allege a breach of contract between an employer and a labor organization or between labor organizations in an industry affecting commerce.") *cert. denied,* —— U.S. ——, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984); *Atchison, Topeka and Sante Fe Railway v. Locals No. 70,* 511 F.2d 1193, 1195 (9th Cir.1975) (same).

■ There are in fact two parts to the question whether this Court has jurisdiction under § 301(a). The first is whether the plaintiff has met the jurisdictional requisites of § 301(a) as described above. The second is whether, even though the requisites are met, this Court lacks jurisdiction because the NLRB has preempted the district court, a concept referred to as primary jurisdiction. *See generally San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In most opinions, these two aspects of jurisdiction are not separated, because the existence of the former is undisputed. In other cases, the two aspects are so intertwined that it may be pointless to separate them. In this case, however, distinguishing the two separate questions clarifies that this Court lacks subject matter jurisdiction over the action.

The first and third jurisdictional requisites are met in this case as there is or was a contract (the PHA) between plaintiff and defendants. But in neither plaintiff's com-

plaint nor its opposition to this motion does it even allege a breach of this PHA or refer to its terms. Plaintiff is not seeking to enforce the PHA; quite the contrary, he wishes this Court to pronounce that the PHA is dead. Nor can this suit be considered one to interpret the terms of the PHA. There is no disagreement as to what it means or to whom would be a party to it if the PHA is in effect. There is *only* the question whether it is in effect.

The only cases this Court has found in which plaintiff sought only to determine the validity of a contract are *Hernandez v. National Packing Co.*, 455 F.2d 1252 (1st Cir.1972) and *NDK Corp. v. Local 1550 of the United Food Commercial Workers International Union*, 709 F.2d 491 (7th Cir. 1983). Those Courts decided to "adhere to the plain language of § 301 and hold that it provides jurisdiction for suits for violation of contracts but not for determinations of the validity of contracts where validity is the ultimate issue." 709 F.2d at 493.

Faced with this case law that plaintiff must allege a breach of contract or attempt to interpret its terms to have jurisdiction under § 301, plaintiff asserts that the Ninth Circuit case of *McNeff* provides this Court with jurisdiction.

In that case, trustees sued in federal court a subcontractor who had signed a PHA but failed to make the trust fund contributions it required. The plaintiff based jurisdiction on § 301. The major question presented by the case was the enforceability of PHA's. The Court held that "§ 8(f) pre-hire contracts are voidable by the employer until the union attains majority support. Until such a repudiation, however, the contract is fully enforceable in an action under § 301 of the L.M.R.A." 667 F.2d at 803–04.

The Ninth Circuit then stated:

McNeff, Inc. has argued that this holding creates a conflict in the law, since it will require the District Courts to make determinations regarding the majority status of a union at different times once it has made the finding that there has been a repudiation. It cites *South Prai-*

*rie Construction Co. v. Local 627, International Union of Operating Engineers (Peter Kiewit)*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) for the proposition that these determinations are solely the province of the N.L.R.B. *Peter Kiewit* is, however, not controlling here. The Board has expertise in determining the majority status of a union at any given time. It has no apparatus for determining a union's past status. If there has been a repudiation, the crucial question is whether the union had previously attained majority status. Re-creation of past relationships for the purpose of resolving factual disputes is one of the traditional functions of a trial court, and not a process in which the N.L.R.B. has any extraordinary expertise. Therefore, in this opinion we do not extend the District Court's jurisdiction into an area in which the N.L.R.B. exercises exclusive authority.

We need not resolve this issue, however, because it is clear that in this case the employer never repudiated the contract.

667 F.2d at 804.

When the Supreme Court affirmed *McNeff*, it made no mention of this argument, but only held:

A § 8(f) prehire agreement is subject to repudiation until the union establishes majority status. However, the monetary obligations assumed by an employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant unit. There having been no repudiation in this case, the judgment of the Court of Appeals is Affirmed.

461 U.S. at 271, 103 S.Ct. at 1759.

Nowhere in either opinion is there any indication that the Court's holding would increase a district's jurisdiction, or that either modified the three jurisdictional requisites. Once the hurdle of whether PHA's could be enforced in the same manner as any other collective bargaining agreement,

*McNeff* was a classic § 301 case: there was a contract, McNeff breached the contract, and the contract was between an employer and a union. Even if repudiation and majority status had been issues, which they were not, they would have been merely threshold issues reached by the court as it attempted to enforce the contract.

■ It is at this point that the distinction between the two aspects of jurisdiction in cases under § 301—that of the requisites as set out in *Alvares* as opposed to that of the NLRB's primary jurisdiction—becomes important. While it is arguable that the dicta in *McNeff* upon which plaintiff relies might have some effect as to the latter issue, it has no effect upon the requirement that the plaintiff allege a breach of the PHA to establish jurisdiction under § 301. Therefore, this court does not have jurisdiction under § 301.

■ That plaintiff brings this action for declaratory relief does not change the foregoing analysis. The Declaratory Judgment Act, 28 U.S.C. § 2201, creates no independent basis of jurisdiction, but only provides an additional remedy. *E.g., Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *California Dump Truck Ass'n v. Associated General Contractors,* 562 F.2d 607 (9th Cir.1977). Thus, if there is no jurisdiction under § 301 because the requisites are not met, seeking declaratory relief does not provide jurisdiction.[1]

One of the few Ninth Circuit decisions to mention both declaratory judgments and jurisdiction under § 301 did so in an ambiguous fashion. The Court said that if the plaintiff union had "stated an actual controversy" and requested a finding that was not barred by the NLRB's primary jurisdiction, the district court would have jurisdiction to give declaratory relief. *Brotherhood of Teamsters, Local No. 70 v. California Consolidators,* 693 F.2d 81, 83–84 (9th Cir.1982) U.S. appeal pending. Whether the "controversy" referred to is an actual breach of contract or a "case or controversy" in the constitutional sense is not clear. But either meaning would bar this plaintiff.

■ Plaintiff has not alleged a breach of contract. Nor has it presented any showing that there is an actual case or controversy in this case. While plaintiff and defendants disagree as to whether plaintiff successfully repudiated the PHA, that is not sufficient to create a case or controversy. "Basically, the question in each case is whether ... there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826. Plaintiff does not now employ any workers who might be covered by the agreement, nor has it alleged that it plans to do so. Plaintiff never alleged in either its papers nor in oral argument that it intended in near future to do anything which would or could violate the PHA. There is no showing that is in danger of suffering any direct injury. Therefore, the action is not ripe. *See also Stewart v. M.M. & P. Pension Plan,* 608 F.2d 776 (9th Cir.1979) (case against trust plan under § 301 and § 1337 not ripe where plaintiff never alleges intent to retire in the near future). Because, however,

---

1. *Castaneda v. Dura-Vent Corp.,* 648 F.2d 612 (9th Cir.1981), contains some language which could be read to change the jurisdictional requirements for declaratory relief:

> The fact that the claim does not allege a violation of the collective gargaining agreement does not automatically take it out of the scope of Section 301. Section 301 is not restricted to suits for damages or specific performance.... Parties may seek declaration of their rights under collective bargaining agreements.

*Id.* at 616 n. 1 (citations omitted). But as the Court explains jurisdiction under section 301 exists only "to the extent that the dispute is focused upon and governed by the terms" of the contract. Here, the dispute is not focused upon the contract terms, but upon whether the contract exists. Additionally, the employees' claim in *Castaneda* that the employer coerced employees to ratify the contract could be seen as a breach of the contract, though not plead in such terms. *Cf. Seay v. McDonnell Douglas Corp.,* 427 F.2d 996 (9th Cir.1970).

argument has focussed on § 301, the Court prefers to rest its dismissal primarily upon that ground.

## PRIMARY JURISDICTION

 Assuming that the jurisdiction requisites had some how been met, this Court would still lack jurisdiction under the doctrine of primary jurisdiction.[2] "Primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board." *See Glaziers & Glass Workers Local Union # 767 v. Custom Auto Glass Distributors,* 689 F.2d 1339, 1342 (9th Cir.1982). Questions of representation by and certification of a union are vested exclusively in the NLRB by § 9(b), 29 U.S.C. § 159(b) of the NLRA. Accomodating § 301 jurisdiction and NLRB's exclusive domain has been a troublesome aspect of § 301 jurisdiction.

In *Local No. 3–193 International Woodworkers v. Ketchikan Pulp,* 611 F.2d 1295 (9th 1980), plaintiff sought a declaratory judgment that a provision of the agreement between plaintiff and defendant meant that plaintiff's present bargaining representative also represented employees of defendant's subsequently acquired companies. The Ninth Circuit raised the jurisdiction issue of its own accord, and stated *"we conclude that Congress did not intend by enacting § 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining unit."* Id. at 1301. (emphasis added)

In reaching this holding, the court said:

Undoubtedly in recognition of this conception of Congressional policy, the labor bar has processed almost all representation problems administratively through the NLRB, and such problems have been given review of NLRB action....

· · · · ·

In the present case the Union is attempting an end run around Section 9 of the Act and under the guise of contract interpretation wants to avoid self-determination of a bargaining agent by a substantial number of employees and determination of an appropriate bargaining unit by the NLRB, which has primary authority in this area. This cannot be countenanced.

*Id.* at 1299–1300.

The Eighth Circuit has advanced another test which has been approved by the Ninth Circuit. *See California ·Consolidators,* 693 F.2d at 83 n. 4. In *Local Union 204 v. Iowa Electric,* 668 F.2d 413 (8th Cir.1982) the Court held that there was no jurisdiction in a case in which a union sued for breach of collective bargaining agreement and the issue was whether it included some professionals. In reaching the decision the court said:

We believe the appropriate line between those cases where the district court has jurisdiction under section 301 and those in which it does not is to be determined by examining the major issues to be decided as to whether they can be characterized as primarily representational or primarily contractual. *See Cappa v. Wiseman,* 659 F.2d 957 (9th Cir.1981).

668 F.2d at 419.

What the plaintiff seeks in this case is a determination that it is no longer obligated under the PHA. This determination would normally be obtained by it petitioning the NLRB, pursuant to the last clause in § 8(f), 29 U.S.C. § 158(f), to hold an election under section 9, 29 U.S.C. § 159. The plaintiff made such a petition, which the NLRB refused. Thus, the plaintiff, in an "end run" around the NLRB is attempting to secure from the Court the same result it wanted to obtain from the NLRB. Plaintiff attempts to distinguish *Ketchikan* on the ground that it first went to the NLRB,

**2.** This analysis also prevents this court from having jurisdiction pursuant to 28 U.S.C. § 1337. "The National Labor Relations Act preempts state and federal court jurisdiction to remedy conduct that is arguably protected or

prohibited by the Act," and so § 1337 jurisdiction does not exist in such cases. *Atchison, Topeka & Sante Fe Railway Co. v. Local Nos. 70,* 511 F.2d 1193, 1194 (9th Cir.1975).

and that this is therefore not an *"initial"* determination. But whether plaintiff seeks Court aid first or after being refused by the NLRB, the result is the same.

Plaintiff's argument that *McNeff* establishes that whether a union achieved majority status prior to repudiation is for the district court to determine ignores many facts. *McNeff's* comments were dicta, as the Court itself realized. 667 F.2d at 804. The Court did not reach the question because the employer had not repudiated the PHA. Second, the plaintiff in *McNeff* was a trustee, and could not bring an action before the NLRB. The Ninth Circuit has held that a trust's inability to bring an action before the NLRB can make the rule in *Ketchikan* inapplicable. *Laborers Health & Welfare Trust Fund v. Kaufman & Broad,* 707 F.2d 412, 415 (9th Cir. 1983). Thirdly, in *McNeff,* or a suit like *McNeff,* the Court would examine the majority status of a union in the context of enforcing the PHA and determining whether to enforce one of the PHA's terms. Here the plaintiff wishes the Court to examine the majority status of the PHA only to decide whether plaintiff is still bound by the PHA and whether the defendants would represent its employees.

Finally, the Ninth Circuit has, in the context of collective bargaining agreements rather than PHA's, found that a defendant's assertion that a union did not have majority status to be outside the jurisdiction of the district court. *See Glaziers & Glassworkers Local Union #767 v. Custom Auto Glass Distributors,* 689 F.2d 1339 (9th Cir.1982). *McNeff* does not mention or distinguish this case or its holding and therefore this court is reluctant to rely upon *McNeff*'s dicta. *Custom Auto* interpreted Ninth Circuit case law to:

> distinguish [ ] between alleged unfair labor practices that involved interpretations of the terms of the contract as opposed to those that were an attack on the validity of the contract itself. The former were generally considered to be within the jurisdiction of the district court as well as the NLRB whereas the

latter were within the primary jurisdiction of the NLRB.

*Id.* at 1343. Because "the employers are not seeking to interpret the terms of a collective bargaining agreement, but rather to avoid the entire agreement," the court found the district court had no jurisdiction. The same argument is applicable here.

*Custom Auto* also teaches that jurisdiction cannot be created because plaintiff cannot convince the NLRB to hear its complaint. In *Custom Auto,* the court refused jurisdiction even though the employer was precluded from bringing a suit before the NLRB and was asserting the question of majority status as a defense to the union's section 301 suit, rather than as an independent action. Similarly, in *San Diego Building Trades Council v. Garmom,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), one of the cases establishing the doctrine of primary jurisdiction, the Supreme Court held that there was no jurisdiction, even though the NLRB had previously declined jurisdiction of a representation proceeding.

## PLAINTIFF'S MOTION FOR SANCTIONS

▆▆▆ Plaintiff, in its opposition to the motion to dismiss, moved that this Court impose sanctions upon defendant's for bringing this motion, pursuant to Federal Rule of Civil Procedure 11. As this Court grants defendants motion, it surely cannot regard the defendants' motion as frivolous. Even if it had not granted the motion, however, this is a question of first impression and can in no way be considered such a settled area of the law. Sanctions would be inappropriate for a motion where the moving party relied upon the Ninth Circuit case law and had a reasoned response to the opposition.

While this Court has and will grant sanctions for bringing frivolous motions, parties should remember that the motion for sanctions under Rule 11 is itself subject to Rule 11.

The Court therefore grants defendants' motion to dismiss for lack of subject matter

jurisdiction and denies plaintiff's motion for sanctions.