**ION CONSTRUCTION, Petitioner,**

v.

**DISTRICT COUNCIL OF PAINTERS NO. 16, et al., Respondents.**

No. C–83–5279.

United States District Court, N.D. California.

Aug. 28, 1984.

---

---

Robert M. Lieber, Richard N. Hill, Wendy L. Tice-Wallner, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioner.

David A. Rosenfeld, VanBourg, Allen, Weinberg & Roger, San Francisco, Cal., for respondents.

## ORDER

AGUILAR, District Judge.

The general rule in labor-management relations is that a union and an employer may not enter into an agreement until a majority of the employees in a unit have selected the union as their exclusive bargaining agent. Section 7 of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 157, grants employees the right to choose their representative for the purposes of collective bargaining. Section 9(a) of the Act provides that the bargaining representative for the employees in a unit must be the representative "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a).

Based on the guarantees contained in sections 7 and 9(a), "[t]he [Supreme] Court has held that both the union and the employer commit unfair labor practices when they sign a collective bargaining agreement recognizing the union as the exclusive bargaining agent when in fact only a minority of the employees have authorized the union to represent their interests." *NLRB v. Iron Workers ("Higdon")*, 434 U.S. 335, 344, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978). Further, it is an unfair labor practice for either an employer or a union to interfere in any way with the employees' selection of their bargaining representative. *See* 29 U.S.C. § 158(a)(1, 2) and (b)(1)(A).

The scheme established in sections 7 and 9(a) does not, however, work effectively in all industries. In particular, the exigencies of the construction industry are such that the procedures contemplated in sections 7 and 9(a) are inapt. Recognizing the peculiar needs of the construction industry, Congress enacted section 8(f) of the Act to specifically address the problem.

Section 8(f) provides:

It shall not be an unfair labor practice under subsections (a) and (b) of this section for any employer engaged primarily

in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because (1) the majority status of such has not been established under the provisions of section 159 of this title prior to the making of such agreement .... *Provided* ... That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e).

As summarized in the Supreme Court's recent decision in *Jim McNeff v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983), "§ 8(f) allows construction industry employers and unions to enter into agreements setting the terms and conditions of employment for the workers hired by the signatory employer without the union's majority status first having been established in the manner provided for under § 9 of the Act."

By enacting § 8(f), Congress attempted to satisfy various interests within the construction industry. Without the § 8(f) exception, construction workers have a difficult time gaining the benefits of a collective bargaining agreement because the workers may not be on a job long enough to elect a union as a bargaining representative. *See* S.Rep. No. 187, 86th Cong., 1st Sess., 55–56 (1959), U.S.Code Cong. & Admin.News 1959, p. 2318. In addition, § 8(f) is of great importance to construction industry employers because it allows an employer to "know his labor costs before making the estimate upon which his bid will be based" and it gives the employer a "supply of skilled craftsmen for quick referral." *See* H.R.Rep. No. 741, 86th Cong., 1st Sess., 19 (1959), U.S.Code Cong. & Admin. News 1959, p. 2318.

■ While § 8(f) provides for the establishment of pre-hire agreements, it contains no provision with respect to their repudiation. Under the Act, a pre-hire agreement may be terminated if either the union or the employer petition the NLRB for a representative election. 29 U.S.C. § 158(f). In *Higdon*, the Supreme Court affirmed that § 8(f) was not intended to impinge on employees' § 7 right to select their own bargaining representative. Thus, if the employees select a bargaining representative, then the pre-hire agreement expires.

■ A pre-hire agreement may also be terminated by either party's repudiation of the agreement. Although the statute does not specifically provide for repudiation, the Supreme Court has repeatedly protected the parties' right to repudiate a pre-hire agreement until such time as the union achieves majority support in the relevant bargaining unit. In *Higdon*, the Court specially noted the voluntary nature of pre-hire agreements, 434 U.S. at 348 n. 10, 98 S.Ct. at 659 n. 10, and affirmed the NLRB's decision that until and unless the union achieves majority status, "the pre-hire agreement is voidable ..." *Id.* at 341, 98 S.Ct. at 655.

In the *Jim McNeff* case the Supreme Court made much stronger statements about the voidability of pre-hire agreements. In its conclusion, the Court stated that, "A § 8(f) pre-hire agreement is subject to repudiation until the union establishes majority status." 103 S.Ct. at 1759. The Court also remarked that "... the voluntary nature of prehire agreements clearly gave petitioner the right to repudiate the contract ..." *Id.* After making this observation, the *McNeff* Court found that the employer "had never manifested an intention to void or repudiate the contract." *Id.* Therefore, the Court held that the § 8(f) agreement was still viable. *Id.*

In *McNeff*, the Supreme Court found that "[i]t is not necessary to decide in this case what specific acts would effect the repudiation of a pre-hire agreement—sending notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or, as respondents suggest, precipitating a representation election pursuant to the final provision in § 8(f) that shows the union does not enjoy majority support." *Id.* 103 S.Ct. at 1759 n. 11.

Not surprisingly, footnote 11 has spawned a considerable amount of litigation about what constitutes effective repudiation of a § 8(f) pre-hire agreement. *See e.g. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Co.,* 733 F.2d 1321 (8th Cir.1984); *Roberts v. Ayala,* 709 F.2d 520 (9th Cir.1983); *Painters District Council No. 3 Pension Fund v. Johnson,* 566 F.Supp. 592 (W.D.Mo.1983).

The question before this Court is somewhat different. Before determining whether the employer has effectively repudiated the pre-hire agreement, the Court must decide who should make the determination about the effectiveness of the employer's asserted repudiation. The employer argues that the issue of repudiation can only be decided by the courts. The union maintains that the repudiation issue should be resolved in the first instance by an arbitrator, pursuant to the arbitration clause in the collective bargaining agreement that is incorporated in the pre-hire agreement.

Although *Higdon* and *McNeff* acknowledge the so-called "right to repudiate" a pre-hire agreement, neither case addresses the question that confronts this Court. Notably, the question is before this Court now in three separate cases, including this one. *See also Cacioppo v. Royal Tilt Construction,* C–82–6161 RPA; *District Council of Iron Workers v. Link-Up Fencing,* C–83–20081–RPA.

The Court has found only two cases in which courts have addressed the issue currently before this Court. *See McNally Pittsburgh v. Utah Building & Construction Trades Council, ("McNally Pittsburgh")* C–83–0842W (D.Ut. April 19, 1984); *Northern California District Council of Laborers v. Robles Concrete Co. ("Robles Concrete")* 149 Cal.App.3d 289, 196 Cal.Rptr. 776 (1983). These courts arrived at exactly opposite conclusions.

In *McNally Pittsburgh,* the employer and the union entered into a Project Stabilization Agreement. In addition, they both signed a Memorandum of Understanding that provided that the union would refer members to the various contractors and subcontractors on the project. (Contractors and subcontractors were not required to sign any agreement with the union.) Plaintiff McNally Pittsburgh had signed a prime contract to build a coal processing plant, and signed the Project Stabilization Agreement and the Memorandum of Understanding. Plaintiff thought that signing the Memorandum of Understanding was a mistake and therefore sent a letter to the union rescinding its agreement to the Memorandum of Understanding. The district court found that the Memorandum of Understanding was a pre-hire agreement within the meaning of § 8(f). Slip op. at p. 9.

In *McNally Pittsburgh,* Judge Winder found that an arbitrator should make the initial determination of whether a purported repudiation of a pre-hire agreement was effective. Judge Winder concluded that the court's role is limited to deciding "whether an enforceable agreement existed prior to the attempt to rescind and, if so, whether the scope of the agreement's arbitration clause is broad enough to require arbitration of a dispute concerning an attempt to rescind the agreement." *McNally Pittsburgh,* Slip op. at p. 12. The Judge then found that "[t]he Court is persuaded that the question of whether an attempt to rescind the agreement by a party thereto is effective is a dispute which 'arises out of the interpretation of application of the Agreement.'" *Id.* at p. 13–14. Accordingly, Judge Winder referred the repudiation question to an arbitrator. *Id.* at p. 14.

The California Court of Appeal took an entirely different approach to the question in the *Robles Concrete* case. In *Robles Concrete,* the employer wrote the union to advise that it was cancelling the pre-hire agreement effective on the termination date of any current collective bargaining agreement. When that date came, the employer stopped abiding by the terms of the pre-hire agreement. The union subsequently filed a grievance. The grievance proceeded to arbitration, as provided in the collective bargaining agreement that was

incorporated in the pre-hire agreement. The arbitration panel determined that the employer had violated the pre-hire agreement, and granted an arbitration award in favor of the union.[1]

After the arbitration decision, the union petitioned the San Francisco Superior Court for confirmation of the arbitration award. The employer cross-petitioned for the court to vacate the arbitration award. The Superior Court found that the union had never achieved majority status in the employer's workforce and that the employer had effectively repudiated the pre-hire agreement. Consequently, the Superior Court concluded that the arbitrator lacked jurisdiction to issue an award.

The California Court of Appeal affirmed the Superior Court's decision on all counts. Of most importance to this Court, the state Court of Appeal found that the court, not the arbitrator, should make the decision about whether the employer had effectively repudiated the pre-hire agreement.

The union contended that the Superior Court did not have jurisdiction to hear the employer's defense of repudiation because the pre-hire agreement, which incorporated an underlying collective bargaining agreement, specified an arbitration procedure for resolution of disputes. However, the Court of Appeal rejected the cases advanced by the union. In particular, the court distinguished the Ninth Circuit decision in *California Trucking Association v. Brotherhood of Teamsters,* 679 F.2d 1275 (9th Cir. 1981). In *California Trucking,* the Court of Appeals for the Ninth Circuit ruled that "the issue whether repudiation has occurred must normally be submitted to arbitration when the contract calls for arbitral resolution of questions arising under the collective bargaining agreement." 679 F.2d at 1282 (citations omitted). In *Robles Concrete,* the court found "important distinctions" between a collective bargaining agreement such as the one in the *California Trucking* case, and pre-hire agree-

ments. 149 Cal.App.3d at 293, 196 Cal. Rptr. 776. The critical difference, of course, is the binding nature of collective bargaining agreements as contrasted with the voidability of pre-hire agreements as affirmed by the Supreme Court's *McNeff* decision.

The *Robles Concrete* court concluded that the employer's defenses, including repudiation of the pre-hire agreement, "were properly before the trial court. A pre-hire agreement is rendered void and unenforceable by an effective repudiation: a party is not required to abide by the terms of a void instrument." *Id.* 149 Cal.App.3d at 293, 196 Cal.Rptr. 776.

This Court finds the reasoning in the *Robles Concrete* opinion more convincing than the analysis in the *McNally* decision.

In analyzing the question of whether the repudiation issue should be referred to an arbitrator, the Court acknowledges the strong federal policy favoring arbitration of labor disputes. *See e.g., United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960).

■ While the Supreme Court plainly favors arbitration of labor disputes, Supreme Court doctrine is equally clear that the courts may only send cases to arbitration if the parties have agreed to arbitrate. *See e.g. John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The threshold inquiry in determining whether a dispute is arbitrable is reserved to courts. *See e.g. Atkinson v. Sinclair Refining,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). This determination ordinarily involves an inquiry into whether the parties have an existing and affective agreement to arbitrate and secondarily whether the agreement contemplates arbitration of the particular dispute. *See John Wiley & Sons,* 376 U.S. at 547, 84 S.Ct. at 913.

---

1. The arbitration panel made its decision based only on the agreement itself. The employer did not appear at the arbitration hearing.

■ The question confronting this Court, whether the Court or an arbitrator should resolve the repudiation issue, is, in essence, exactly the same as the question of whether there is an agreement to arbitrate. If the Court finds that the employer's repudiation was effective, then there is no longer any agreement to arbitrate disputes between the parties. If the Court finds that the purported repudiation was not effective, then the Court has, in essence, found that there is an existing agreement to arbitrate, and the Court will send the underlying dispute to arbitration.[2] In all important respects, the Court's inquiry is indistinguishable from the ordinary case in which the Court, not the arbitrator, decides whether there is a contract by which the parties agree to arbitrate disputes. The Supreme Court has concluded unambiguously that this decision is properly reserved to the courts. *See Atkinson*, 370 U.S. at 241, 82 S.Ct. at 1320.

In addition to being consistent with prevailing Supreme Court doctrine, this Court's decision to address the repudiation issue itself comports with common sense. A couple of scenarios will demonstrate the sensibility of this result. If the Court referred the repudiation issue to an arbitrator, and the arbitrator adjudged the repudiation effective, then the arbitrator would have essentially decided that no agreement existed and therefore that he or she did not have jurisdiction to make that decision.[3] The matter would have to go to the Court for resolution of additional issues. If, on the other hand, the arbitrator decided that the purported repudiation was not effective, then presumably the arbitrator would proceed to hearing the merits of the underlying dispute. But, if the arbitrator's initial decision about the repudiation question was incorrect, then the Court would have to vacate the arbitration award and rehear the substantive dispute *de novo*.

Thus, the Court's approach will effect economies to the benefit of both the Court and arbitrator, as well as the litigants.

In sum, the Court concludes that applicable Supreme Court doctrine and the principles of efficient case management compel the finding that the Court, not an arbitrator, should make the initial determination of whether a party has effectively repudiated a § 8(f) pre-hire agreement. With this legal question resolved, the Court turns to consideration of the question of whether the employer in the instant action effectively repudiated its pre-hire agreement with the union.

In April 1982, petitioner Ion Construction entered into a contract to perform some painting work on a restoration project in Oakland, California. Ion then signed a pre-hire agreement with respondent District Council of Painters No. 16, Affiliated Local 3. Ion apparently employed six painters for the restoration project. All six of the painters were members of the respondent union. The record shows that none of the painters had ever worked for Ion previously and Ion never transferred any of these painters to another job site. Ion laid off five of the six painters within two months. Ion kept the other painter until the project was completed in September 1982.[4]

On March 31, 1983, Ion's attorney wrote a letter to the union stating, among other things, "... because the collective bargaining agreement with Painters Local Union No. 3 ... was a pre-hire agreement, Ion Construction does not consider that contract to have any continuing force or effect. Ion Construction will not apply that contract to any of its current or future job

2. It is critical to note that the dispute the union seeks to have arbitrated does not relate directly to the purported repudiation. Rather, the subject matter of the dispute is the employer's conduct after the purported repudiation of the pre-hire agreement.

3. The arbitrator's authority extends only so far as the parties' agreement to arbitrate. If the repudiation of the pre-hire agreement was effective, then there would no longer be any agreement to arbitrate, and the arbitrator would be without authority to make any rulings.

4. Ion complied with the pre-hire agreement and underlying labor-management contract in all respects during the restoration project.

sites since it no longer considers the contract to be applicable to any of those sites."

As noted earlier, the Supreme Court has not stated precisely how a signatory to a pre-hire agreement can repudiate and terminate that agreement. In *Jim McNeff*, the Court did not have to decide what is required to repudiate a pre-hire agreement the Court found that the employer had taken no action to repudiate the agreement. 103 S.Ct. at 1759. In footnote 11, the Court explained that "[i]t is not necessary to decide in this case what specific acts would affect the repudiation of a prehire agreement—send notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or, as respondents suggest, precipitating a representation election pursuant to the final proviso in § 8(f) that shows the union does not enjoy majority support." *Id.* 103 S.Ct. at 1759 n. 11.

This Court finds that there is no question that the employer effectively repudiated the agreement. The meaning of the March 31 letter is unambiguous. As the Court of Appeals for the District of Columbia said that "[T]he essential point is that the union and employees be put on notice that the contract is voided." *Washington Area Carpenter's Welfare Fund v. Overhead Door Co. of Metropolitan Washington*, 681 F.2d 1, 9 (D.C.Cir.1982); *see also Painters District Council No. 3 Pension Fund v. Johnson*, 566 F.Supp. 592 (W.D.Mo.1983) (letter stating repudiation was effective).

Thus, given the voidable nature of pre-hire agreements as discussed above, and the unmistakable message in the employer's March 31 letter, the Court finds that the employer effectively repudiated the pre-hire agreement on March 31, 1983.

For the reasons stated above, and for good cause appearing, the Court hereby grants petitioner's motion for summary judgment and enters this Order vacating the arbitration award issued by the grievance committee.

IT IS SO ORDERED.