785 F.2d 706
 121 L.R.R.M. (BNA) 3385, 54 USLW 2513,
104 Lab.Cas. P 11,868
 JOHN S. GRIFFITH CONSTRUCTION CO., Plaintiff-Appellant,
v.
UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF SOUTHERN
CALIFORNIA, Carpenters Local Union # 563 and
Southern California Conference of
Carpenters & Joiners,
Defendants-Appellees.
 No. 84-6501.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1985.
Decided March 20, 1986.
 
 Alan J. Saxe, Hersh & Stoll, Newport Beach, Cal., for plaintiff-appellant.
 John T. DeCarlo, DeCarlo & Connor, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, SCHROEDER, and BRUNETTI, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 John S. Griffith Construction Co. appeals from the district court's dismissal of its complaint for lack of subject matter jurisdiction. Griffith sought a declaratory judgment to ascertain whether it had repudiated a section 8(f) prehire agreement before the signatory unions had attained majority status. We hold that the court below had jurisdiction in the case; therefore, we reverse and remand.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 From January through October 1983, appellant John S. Griffith Construction Co. (Griffith) was the owner-builder of a shopping center in Glendale, California. Griffith's initial general contractor for the project was Stolte, Inc. (Stolte). In July 1983, several construction unions, including appellee Carpenters Local Union No. 563 (Carpenters) and Cement Masons Local Union No. 893 (Cement Masons), picketed the Glendale construction site in an effort to improve their bargaining position in a collective bargaining negotiation with Stolte. As a result of the picketing, construction at that site came to a halt.
 
 
 3
 On July 14, 1983, Griffith signed an interim agreement with the unions and removed Stolte as general contractor after determining that doing so would achieve a resumption of construction at the site. The interim agreement was a section 8(f) agreement, see 29 U.S.C. Sec. 158(f) (1982). Section 8(f) agreements, also known as "prehire" agreements, enable employees in the construction industry to obtain some of the benefits of union representation before the union has come to represent a majority of the employees. See Todd v. Jim McNeff, Inc., 667 F.2d 800, 802 (9th Cir.1982), aff'd, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). At the time that Griffith signed the agreement, it had no employees. After the signing, Griffith hired union workers for the pay periods of July 17, July 24, and July 31, 1983. Meanwhile, Stolte negotiated with the union and executed a prehire agreement of its own, allowing it to return to its position as general contractor. Stolte then hired union workers to complete the job, which ended around November 1, 1983.
 
 
 4
 Griffith, in a November 4 letter to Carpenters and in a November 11 letter to Cement Masons, attempted to repudiate the interim agreement. Appellees disputed the effect of this act. On November 23, 1983, Griffith petitioned the National Labor Relations Board, Region 21, for an election to determine the status of the interim agreement by determining whether a majority of the employees either belonged to or supported the unions. The NLRB, on December 14, 1983, dismissed the petition because "the Employer does not currently employ any employees, nor has it employed employees during a representative period of time." Griffith appealed to the Executive Secretary, and the NLRB affirmed the dismissal on March 13, 1984.
 
 
 5
 On April 6, 1984, Griffith filed a complaint in district court for declaratory relief against Carpenters, seeking a determination that its repudiation had been effective and that therefore it was under no obligation to Carpenters. It also sought costs and attorneys' fees. Carpenters filed an answer on May 7, 1984, and Griffith moved for summary judgment on May 14, 1984. The district court granted Griffith's motion for summary judgment on June 4, 1984, concluding that the November 4, 1983 repudiation was valid and that Griffith was not obligated to Carpenters. The court found that it had jurisdiction pursuant to 29 U.S.C. Sec. 185, 28 U.S.C. Sec. 1337, and 29 U.S.C. Sec. 301(a). Excerpt of Record (E.R.) at 144.
 
 
 6
 Had all matters stopped there, perhaps we would not have this case before us. They did not, however. While Griffith pursued a declaratory judgment against Carpenters, it also filed a complaint for declaratory relief against Cement Masons. Again, Griffith sought a declaration that it had validly repudiated the interim agreement, that it bore no obligation to Cement Masons, and that it was entitled to costs and attorneys' fees. Instead of duplicating Carpenters' answer, Cement Masons filed a motion to dismiss, claiming that the district court lacked subject matter jurisdiction. In a memorandum decision issued on September 24, 1984, the court granted Cement Masons' motion to dismiss on the basis of a lack of subject matter jurisdiction.
 
 
 7
 Prompted by Cement Masons' arguments on subject matter jurisdiction, the court, now acting consistently, also notified Griffith and Carpenters on August 30, 1984, that it would reconsider the June 4, 1984 judgment in favor of Griffith. Carpenters filed a motion for relief from judgment on October 10, 1984, which Griffith opposed. On November 7, 1984, the court dismissed the case for lack of subject matter jurisdiction.[1] Griffith filed its notice of appeal on November 16, 1984.
 
 
 8
 The Cement Masons case is not before us, however. After Griffith filed its opening brief in this court, the Cement Masons Trust Funds filed an action against Griffith, seeking specific performance of the interim agreement between Griffith and Cement Masons. In this separate case, Griffith moved for summary judgment. The district court ruled that Griffith's repudiation of the interim agreement was effective as of November 1983. Griffith and Cement Masons have stipulated to a dismissal of that appeal for mootness. Thus, only the question of whether the interim agreement with Carpenters is still binding remains. Further discussion is focused on the case involving that issue.
 
 II.
 THE PRIMARY JURISDICTION DOCTRINE
 
 9
 This case is concerned with the doctrine of primary jurisdiction. The question is whether that doctrine bars a district court from hearing a case when the Board has refused to make the initial determination as to representational status. What follows is an explanation of why the district court is not so barred under the circumstances of this case.
 
 
 10
 A. Doctrine's Application to Majority Status Questions.
 
 
 11
 When Congress added subsection (f) to 29 U.S.C. Sec. 158, Pub.L. No. 86-257, Sec. 705(a), 73 Stat. 519, 545 (1959), it created an exception to the general policy prohibiting binding collective bargaining agreements between employers and employee bargaining units that have not received majority support. Section 8(f) permits employers and unions in the construction industry to enter into "prehire" agreements--agreements that allow employees in an industry characterized by constant fluctuations in the work force to acquire some of the benefits of union representation while giving an employer the option to repudiate the agreement until the minority bargaining unit with whom it negotiated attains majority status. See Jim McNeff, Inc. v. Todd, 461 U.S. 260, 265-66, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983); NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Iron Workers (Higdon), 434 U.S. 335, 344-45, 98 S.Ct. 651, 657-58, 54 L.Ed.2d 586 (1978); Orange Belt District Council of Painters No. 48 v. Kashak, 774 F.2d 985, 988 (9th Cir.1985). When the union does attain majority status, the section 8(f) agreement becomes a binding collective bargaining agreement between the employer and the union. The majority status issue, then, is pivotal; it determines whether employees are entitled to the full protection of a collective bargaining agreement or whether they receive only the partial protection of a prehire agreement.
 
 
 12
 Because of both the agency's expertise and its mandate from Congress, the NLRB has the initial responsibility of deciding issues involving representation. See, e.g., Local No. 3-193 International Woodworkers of America v. Ketchikan Pulp Co., 611 F.2d 1295, 1298, 1301 (9th Cir.1980). Courts have jurisdiction to decide cases involving breaches of prehire or collective bargaining agreements, Labor Management Relations (Taft-Hartley) Act Sec. 301, 29 U.S.C. Sec. 185 (1982), but they have no jurisdiction to determine the representational status of the bargaining unit.[2] This is the nub of the primary jurisdiction doctrine. Once the Board decides the issue of majority status, however, a district court (or a state court, as the case may be) may proceed to rule on the section 301 breach of contract claim. See, e.g., Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc., 693 F.2d 81, 83 (9th Cir.1982), cert. denied, --- U.S. ---, 105 S.Ct. 263, 83 L.Ed.2d 199 (1984).
 
 
 13
 B. Effect of the NLRB's Dismissal of the Petition for Election.
 
 
 14
 In two letters, both dated December 14, 1983, the Region 21 Acting Regional Director of the NLRB dismissed the petitions for election in both the Carpenters case and the Cement Masons case by stating:
 
 
 15
 The above-captioned case, petitioning for an investigation and determination of representative [sic] under Section 9(c) of the National Labor Relations Act, as amended, has been carefully investigated and considered.
 
 
 16
 As a result of the investigation, it appears, that because the employer does not currently employ any employees, nor has it employed employees during a representative period of time, further proceedings are not warranted at this time. I am, therefore, dismissing the petition in this matter.
 
 
 17
 Letter from Michael J. Fogerty, Region 21 Acting Regional Director, to Wayne A. Hersh (Dec. 14, 1983), reprinted in Brief of Appellant app. C. This cryptic response from the Board stems from its long-standing policy of refusing to decide representational issues involving employee units of less than two members. See Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557, 565 (9th Cir.1984).
 
 
 18
 At issue is how these letters should be regarded in applying the doctrine of primary jurisdiction. Two interpretations of the Board's dismissal are possible. The first is that "further proceedings are not warranted at this time" because, if the employer did not have any employees, the bargaining unit could never have attained majority status. This is what might be called the "no majority status" interpretation. The second is that "further proceedings," including a determination of majority status, "are not warranted at this time." This is the "no decision" interpretation.
 
 
 19
 If the "no majority status" interpretation is correct, the district court clearly had jurisdiction to decide if Griffith's repudiation letter to Carpenters was effective. See Northwest Administrators, Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1340 (9th Cir.1984); Beck, 746 F.2d at 564-65.
 
 
 20
 The "no decision" interpretation, which is a better description of the Board's action, presents a more difficult question, however. The NLRB explicitly found only that Griffith had no employees during the relevant period. It did not find that no majority status existed. Although there can be no majority of a non-existent group, it is also true that there cannot be a minority of such a group. Thus, it is not logical to say that the Board found that there existed "no majority status." Because any finding of "no majority status" would involve a determination of a representational issue, the district court, as a general rule, would not have jurisdiction. See, e.g., Glaziers & Glassworkers Local Union # 767 v. Custom Auto Glass Distributors, 689 F.2d 1339, 1343 (9th Cir.1982). But see El Paso Building & Construction Trades Council v. El Paso Chapter Associated General Contractors of America, 376 F.2d 797, 799-800 (5th Cir.1967) (district court has jurisdiction to rule on a declaratory judgment petition under 29 U.S.C. Sec. 185 even in the absence of allegations of contract violations). Therefore, the conclusion could be said to follow that the district court properly refused jurisdiction. But the issue is more complicated than this.
 
 
 21
 C. Reasons Why District Court Jurisdiction Exists.
 
 
 22
 If the district court does not take jurisdiction in this matter, Griffith's only recourse is to disregard the prehire agreement and await the Carpenters' attack. That is, to avoid preparing bids that include the costs imposed by the prehire agreement, Griffith must ignore those costs and take its chances. This suit is an effort to obtain a legal determination that will enable it to avoid either course of action.
 
 
 23
 Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), provides teaching that offers comfort to Griffith. In that case, the question was whether a state court was barred from hearing a trespass action stemming from a labor dispute that was, in turn, governed by federal law. Because Sears could not invoke the Board's jurisdiction, and because the union did not invoke it, the Court held that the state court's jurisdiction was not preempted. Id. at 207, 98 S.Ct. at 1762-63. Terming the preemption question one of "primary-jurisdiction"--while distinguishing its use of the phrase from the more usual definition of primary jurisdiction, id. at 199 n. 29, 98 S.Ct. at 1758 n. 29--the Court noted that lack of recourse to the Board altered the traditional analysis:
 
 
 24
 The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board.
 
 
 25
 Id. at 202, 98 S.Ct. at 1760. Sears, of course, does not stand for the proposition that lack of recourse automatically renders the preemption doctrine invalid. See id. at 203, 98 S.Ct. at 1760-61. But it does emphasize that, when an employer has "no adequate means of obtaining an evaluation ... by the NLRB," a court must reconsider any rote application of the doctrine. Id. at 203 n. 34, 98 S.Ct. at 1760 n. 34 (quoting International Longshoremen's Association, Local 1416 v. Ariadne Shipping Co., 397 U.S. 195, 201, 90 S.Ct. 872, 875, 25 L.Ed.2d 218 (1970) (White, J., concurring) ).
 
 
 26
 The approach of Sears is applicable to this case. Moreover, a district court, unlike a state court running the risk of preemption, is likely to be construing federal labor law, not a more regionalized cause of action. In cases such as this, the district court would merely be deciding initially-- in those few instances in which the Board either will not, or cannot, decide--what it would normally review at a later stage in the process. Under these circumstances, it would be "safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge, 403 U.S. 274, 297-98, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971) (citing Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ).
 
 
 27
 Of a similar thrust is our holding that a district court may take jurisdiction if a party has no standing to bring his case before the Board.
 
 
 28
 ... [T]he Trust Funds could not have brought this case before the Board. As the Trust Funds are neither parties to the Agreement nor employees, they have no standing to petition the Board for unit clarification or for an accretion of callback workers.
 
 
 29
 The Trust Funds assert that because they cannot proceed before the Board, the district court suit is necessary ..., and that they are entitled to proceed to trial on the merits of the case. We agree. There is authority for holding that the primary jurisdiction rationale is inapplicable where the injured party bringing the suit has no acceptable means to invoke the Board's jurisdiction and cannot induce its adversary to do so.
 
 
 30
 Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc., 707 F.2d 412, 415 (9th Cir.1983) (citations omitted) (citing Sears, 436 U.S. at 201-02, 98 S.Ct. at 1759-60).
 
 
 31
 Even when a party theoretically has standing before the Board, the Board may not choose to hear his case. Under those circumstances, we have also found the primary jurisdiction doctrine inapplicable. For example, in Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557 (9th Cir.1984), we held that, in the case of an employer having only one employee,
 
 
 32
 [s]ince the Board may not and will not ascertain majority status in a single-employee unit, it would be futile for the employer of a single employee to petition the Board for a representation election in order to repudiate his Section 8(f) pre-hire agreement. This Circuit has previously held that the primary jurisdiction rule does not require the dismissal of a Section 301 suit which raises a question of representation where the party bringing the suit has no standing to bring its case before the NLRB.
 
 
 33
 Id. at 565 (citing Kaufman & Broad ); see also Mesa Verde Construction Co. v. Northern California District Council of Laborers, 602 F.Supp. 327, 331 (N.D.Cal.1985) (finding that the primary jurisdiction doctrine did not apply because "it would have been futile for Mesa Verde to have filed an election petition since the NLRB cannot make a bargaining unit determination as to non-existent jobsites nor could an election be held").
 
 
 34
 To refuse to extend the rationale of Sears, Kaufman & Broad, and Beck to this case--in which the employer can never get a majority status determination from the Board--would tend to exalt the doctrine of primary jurisdiction to the level of an icon when, properly viewed, it is but a device for the practical purposes of protecting the authority of the Board and preserving the uniformity of labor law. Therefore, we hold that, under the special circumstances of this case, the district court may take jurisdiction.[3]
 
 
 35
 Appellees, in asserting that no section 301 jurisdiction exists, reason that the parties are not suing for a breach of contract but rather are litigating the validity of the contract itself.[4] It is true that several cases support this general proposition. See, e.g., Glaziers & Glassworkers Local Union # 767 v. Custom Auto Glass Distributors, 689 F.2d 1339, 1342-43 (9th Cir.1982) (issues involving the validity of the agreement, as opposed to those involving the interpretation of the agreement, were within the exclusive jurisdiction of the NLRB); see also NDK Corp. v. Local 1550 of the United Food & Commercial Workers International Union, 709 F.2d 491, 493 (7th Cir.1983) (per curiam) (where validity is the "ultimate issue" the district court does not have section 301 jurisdiction); Hernandez v. National Packing Co., 455 F.2d 1252, 1253 (1st Cir.1972) (same). But these cases involved situations in which one or both parties were asking the district court to decide the representational issue--an issue within the exclusive jurisdiction of the Board and one which, under the facts, could have been decided by the Board. Griffith's situation, however, is quite different.
 
 
 36
 In the instant case, the Board's "decision not to decide" is as close to a Board-made ruling on representational status as Griffith presently can get.[5] We believe the reasoning in Sears, Kaufman & Broad, and Beck, should be followed. Permitting the district court to take jurisdiction in this case is consistent with the philosophy of section 8(f) agreements. Unless the union has achieved majority status, Griffith should not be bound by the terms of a prehire agreement that it allegedly repudiated, and any future Griffith employees should not be forced to accept the terms of an agreement negotiated by a union that a majority of such employees might not support. As we noted in a recent opinion, Lumber Production Industrial Workers Local # 1054 v. West Coast Industrial Relations Association, 775 F.2d 1042 (9th Cir.1985), we must guard against protecting, inadvertently or not, "the very concept Congress refused to include within the NLRA: compulsory acceptance of a collective bargaining agreement." Id. at 1046. To deny Griffith the opportunity to obtain a declaratory judgment from the only body that can hear its case would come far closer to the "compulsory acceptance" danger than would permitting this limited exception to section 301 jurisprudence suggested by Griffith.[6] Only a determination of representational status will preserve the "two interests that Congress intended to uphold when it enacted Sec. 8(f) [:] ... protect[ing] the Sec. 7 rights of employees to select their own bargaining representative [and] ... promot[ing] Congress' 'intention ... that prehire agreements were to be arrived at voluntarily.' " Jim McNeff, 461 U.S. at 268-69, 103 S.Ct. at 1757-58 (footnote omitted) (quoting NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Iron Workers (Higdon), 434 U.S. 335, 348, 98 S.Ct. 651, 659, 54 L.Ed.2d 586 (1978) ).
 
 
 37
 Upon remand, the district court will consider whether to issue a declaratory judgment with respect to the effect of Griffith's repudiation. Stewart v. M.M. & P. Pension Plan, 608 F.2d 776 (9th Cir.1979), reiterated the requirements for a declaratory judgment:
 
 
 38
 Whenever a declaratory judgment is sought in a federal court, there must be an "actual controversy" before there can be jurisdiction. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
 
 
 39
 Id. at 782 (emphasis in original) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) ).
 
 
 40
 Although, in Stewart, we found that no case or controversy existed because the pensioner did not aver that he intended to apply for pension benefits, id. at 784-85, the situation in this case is quite different. Here Griffith alleges that, until the status of the prehire agreement is settled, it cannot adequately prepare bids for construction jobs. The costs that it must take into account include calculations of the benefits owed to employees, and until it knows the extent of the employee benefits, it cannot estimate the aggregate cost of a job. Cf. Ion Construction v. District Council of Painters No. 16, 593 F.Supp. 233, 235 (N.D.Cal.1984) (emphasizing the importance of section 8(f) agreements in enabling employers to estimate labor costs). This constitutes an immediate and real controversy. The district court has jurisdiction to issue a declaratory judgment on the effect of Griffith's alleged repudiation of the prehire agreement.
 
 
 41
 REVERSED AND REMANDED.
 
 
 42
 SCHROEDER, Circuit Judge, Dissenting.
 
 
 43
 I respectfully dissent from the majority's unprecedented decision that the district court should decide a case in which the sole issue is union majority status. As the majority acknowledges, this is an issue generally regarded as within the primary jurisdiction and expertise of the Board and outside the jurisdiction of the district court. See, e.g., Glaziers & Glassworkers Local # 767 v. Custom Auto Glass Distributors, 689 F.2d 1339, 1343 (9th Cir.1982); Local No. 3-193 International Woodworkers of America v. Ketchikan Pulp Co., 611 F.2d 1295, 1301 (9th Cir.1980).
 
 
 44
 In the exercise of this primary jurisdiction the Board has developed guidelines which permit a contractor who has not had a stable work force over a representative period of time to repudiate a section 8(f) prehire agreement when he is between jobs. The Board has spoken in this very case. A district court decision is therefore not necessary.
 
 
 45
 In Dee Cee Floor Covering, 232 NLRB 72, 97 L.R.R.M. 1072 (1977), the Board stated that an employer could repudiate a section 8(f) prehire agreement if he had no employees working at the time of the repudiation, even though at a previous job the union might have represented a majority. 232 NLRB at 422, 97 L.R.R.M. at 1073-74. The NLRB has adopted that position in its Guidelines for Handling Section 8(f) Cases, which provide:
 
 
 46
 [I]f the employer has operated under a Section 8(f) contract for less than one year, the employees hired during that relatively brief period may not be a sufficiently large sample of the present and prospective employees of the employer, such that a Section 9 determination can be made. In such circumstances, the union may have to demonstrate majority status site by site.
 
 
 47
 1979 Labor Relations Yearbook 350, 361.
 
 
 48
 The most authoritative circuit court decision reviewing a Board decision in this area is NLRB v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981) (en banc), in which both the majority, id. at 365-68, and minority, id. at 371, 373 (Williams, J., concurring and dissenting), opinions recognize that in cases involving project-by-project employers, the NLRB requires unions to prove majority status at each job site in order to defeat attempted repudiations. Only in cases involving employers with stable work forces does the establishment of majority status carry over to future projects. Id. at 366-67. The underlying Board opinion in the Haberman case is also instructive. Haberman Construction Co., 236 NLRB 7, 98 L.R.R.M. 1221 (1978).
 
 
 49
 In this case, the employer, after repudiating the contract when it had no employees, asked the Board to validate the repudiation. The Board said that further proceedings were unnecessary because "the employer does not currently employ any employees, nor has it employed employees during a representative period of time." When this statement is read against the backdrop of the Board's policies on section 8(f) contracts, it is clear that a decision was made. There is no need for the district court to get involved in what is better left to the Board's expertise. See generally San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
 
 
 50
 The majority opinion launches the district court into this area without guidelines. This may be attributable in part to the failure of the parties to direct our attention to the body of law which has been developed by the Board. Nevertheless, the district court, in fulfilling the mandate of the majority, need not feel that it is sailing into uncharted waters. By looking to Board precedent it can minimize the risk of confusion which the majority decision creates.
 
 
 
 [1]
 The court of appeals reviews a district court's dismissal for want of jurisdiction de novo. Clayton v. Republic Airlines, 716 F.2d 729, 730 (9th Cir.1983)
 
 
 [2]
 Dicta in Todd v. Jim McNeff, Inc., 667 F.2d 800 (9th Cir.1982), aff'd, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), indicated that the NLRB's expertise in ascertaining representational status lies only in "determining the majority status of a union at any given time" and does not extend to determining a union's past representational status. Id. at 804. Because a ruling on prior representation would involve just a simple fact-finding function, we opined that a district court's expertise would suffice
 
 
 [3]
 The dissent relies on both Dee Cee Floor Covering, Inc., 232 N.L.R.B. 421, 97 L.R.R.M. 1072 (1977), and N.L.R.B. v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981) (en banc), for the assertion that the Board has already devised a method for handling the situation in which majority support is questioned while no employees are employed at the jobsite. Although it is true that the Board used commendably clear language in Dee Cee Floor Covering to find that the union could not have enjoyed majority status on the date of repudiation because the employer had no employees, 232 N.L.R.B. at 422, 97 L.R.R.M. at 1073-74, the Board's pronouncements in these cases are not always so unequivocal. In Haberman itself, for example, the Fifth Circuit noted that the Board's opinion was "extremely brief and unenlightening." 641 F.2d at 361. The Board's conclusion in Griffith is similarly ambiguous, and none of the dicta in Haberman, explaining at length the history of 8(f) agreements after noting that the union did have majority support on the date of repudiation, see id. at 357, aids this panel in interpreting the Board's curt response to Griffith's inquiry
 
 
 [4]
 Section 301(a) of the Labor-Management Relations (Taft-Hartley) Act, 29 U.S.C. Sec. 185(a) (1982), states:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [5]
 Carpenters, in a letter to the court after oral argument, contended that the issue of whether the repudiation was effective should be decided by an arbitrator and not by the district court. Letter from De Carlo & Connor, counsel for Carpenters, to Phillip B. Winberry, Clerk, United States Court of Appeals for the Ninth Circuit (Nov. 14, 1985). Griffith responded that it never consented to presenting the arbitrator with the question of whether the district court could determine the effectiveness of the repudiation. Letter from Hersh & Stoll, counsel for Griffith, to Phillip B. Winberry, Clerk, United States Court of Appeals for the Ninth Circuit (Nov. 19, 1985). Since the parties did not argue the issue in front of an arbitrator, Orange Belt District Council of Painters No. 48 v. Kashak, 774 F.2d 985, 988-89 (9th Cir.1985), is inapposite. In this case, a more appropriate guide is found in Ion Construction v. District Council of Painters No. 16, 593 F.Supp. 233 (N.D.Cal.1984). Ion Construction involved the issue of which body, the court or an arbitrator, should determine the effectiveness of an employer's alleged repudiation of a prehire agreement. See id. at 236. In analogizing this issue to the issue of "whether there is an agreement to arbitrate," the district court determined that resolution of the matter should be left to the courts. Id. at 238
 If the Court finds that the employer's repudiation was effective, then there is no longer any agreement to arbitrate disputes between the parties. If the Court finds that the purported repudiation was not effective, then the Court has, in essence, found that there is an existing agreement to arbitrate, and the Court will send the underlying dispute to arbitration. In all important respects, the Court's inquiry is indistinguishable from the ordinary case in which the Court, not the arbitrator, decides whether there is a contract by which the parties agree to arbitrate disputes. The Supreme Court has concluded unambiguously that this [latter] decision is properly reserved to the courts.
 Id. (footnote omitted). This portion of Ion Construction's reasoning applies equally well to Griffith's situation. If Griffith did repudiate in time, the prehire agreement ceased to be effective and the district court should be able to issue a declaratory judgment without the possible redundancy of an arbitrator's decision on the matter.
 
 
 [6]
 Lumber Production, with its conclusion that the district court could not exercise section 301 jurisdiction in that case, is not entirely apposite here. It is distinguishable from Griffith on the grounds that the parties in Lumber Production had already had their case heard by the NLRB before they proceeded to litigate in state and federal courts, 775 F.2d at 1044; the parties in Griffith could not have their case heard by the Board