**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL 110 PENSION TRUST FUND, et al., Plaintiffs–Appellees,**

v.

**DANE SHEET METAL, INC., Defendant–Appellant.**

No. 90–5333.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1990.

Decided May 10, 1991.

Charles Isenberg, Thomas J. Schulz (argued), James E. Isenberg, Segal, Isenberg, Sales, Stewart & Cutler, Louisville, Ky., for plaintiffs-appellees.

Robert J. Schumacher (argued), Smith & Smith, Louisville, Ky., for defendant-appellant.

Before NELSON and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

Appellant Dane Sheet Metal, Inc., a construction industry employer, entered into a labor agreement pursuant to § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). The agreement contained an "interest arbitration" clause that provided for binding arbitration if negotiations over renewal of the agreement became deadlocked.

Relying on *John Deklewa & Sons*, 282 N.L.R.B. 1375 (1987), *enforced sub nom. International Assn. of Bridge, Structural and Ornamental Iron Workers Local 3 v. N.L.R.B.*, 843 F.2d 770 (3rd Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), Dane refused to engage in any such negotiations. The arbitrators directed Dane to sign a new § 8(f) agreement, but Dane denied that the arbitrators had been given jurisdiction to act in this situation. The district court held that the arbitrators did have jurisdiction; the employer was therefore directed to comply with the arbitrators' decision.

If we were to accept the employer's position and reverse the judgment of the district court, we would be creating a conflict with at least three other circuits. This we decline to do.

## I

Section 8(f) of the National Labor Relations Act allows employers and labor unions in the construction industry to enter into "pre-hire" labor agreements, as they are called, without any determination that a majority of the workers actually or potentially affected by the agreement desire representation by the signatory union. The Kentucky Sheet Metal Contractors Association, of which appellant Dane Sheet Metal, Inc. was a member, negotiated such a pre-hire agreement in 1984 with Local Union No. 110, Sheet Metal Workers' International Association.

Dane withdrew from the contractors' association in January of 1986. The withdrawal had the effect of eliminating the middleman, as far as Dane and the union were concerned, turning the association's

pre-hire agreement into a direct agreement between Dane and the union.

In February of 1986, three months before the agreement was scheduled to expire, the union notified Dane that it wished to negotiate a renewal. Dane refused to negotiate; over the union's objection, the agreement was allowed to expire. Pursuant to § 8 of Article X of the agreement,[1] the union took the dispute to the sheet metal industry's National Joint Adjustment Board.

On November 12, 1987, the board issued a unanimous decision directing Dane to execute a new agreement identical in terms to the one then in effect between the union and the Kentucky Sheet Metal Contractors Association. Dane, which had not appeared before the board, took no action to comply with this decision.

When the board rendered its decision, the present lawsuit, which had been brought against Dane and a sister company by the trustees of certain labor-management pension and welfare funds to which Dane had allegedly failed to make required contributions, was already pending before the United States District Court for the Western District of Kentucky. In May of 1988 the plaintiffs filed a second amended complaint in this action, alleging—for the first time—that Dane had refused to execute a new agreement as directed in the National Joint Adjustment Board's decision of November 12, 1987. The second amended complaint sought enforcement of the board's decision.

Dane and its sister company promptly filed an answer asserting several affirmative defenses, including one that read thus:

"Defendants affirmatively state in Answer to plaintiffs' Second Amended Complaint, and as a complete defense thereto, that the National Joint Adjusted [sic] Board for the Sheet Metal Industry did not have jurisdiction over defendants, and any and all decisions of the National Joint Adjusted [sic] Board are void and unenforceable as a matter of law."

On cross-motions for summary judgment, the district court held that the interest arbitration clause survived the expiration of the pre-hire agreement's original term.[2] Subject to the proviso that no interest arbitration clause need be included in the new agreement, the court directed the

---

1. The pertinent part of Art. X, § 8, the "interest arbitration" provision, reads as follows:

   "... [A]ny controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

   "(a) Should the negotiations for renewal of this Agreement become deadlocked ... notice to that effect shall be given to the National Joint Adjustment Board.

      *   *   *   *   *   *

   "The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties....

      *   *   *   *   *   *

   "(d) Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration of the expiring agreement."

2. The parties are under the impression that the district court also held that by failing to move the National Joint Adjustment Board to vacate the arbitral award, and by failing to assert a jurisdictional defense in the district court prior to the filing of the second amended complaint, the employer somehow waived the jurisdictional defense. We question whether this reading of the district court's decision is correct. The absence of a motion to vacate, the court seemed to say, precluded the employer from relitigating the *merits* of the board's decision. This would not prevent the employer from raising a *jurisdictional* defense in an enforcement proceeding. See *International Brotherhood of Electrical Workers Local 76 v. City Electric of Olympia,* 639 F.Supp. 1363, 1368 (W.D.Wash.1986) (failure to move to vacate does not bar later assertion that no agreement to arbitrate exists). There is nothing to the contrary in *Corey v. New York Stock Exchange,* 691 F.2d 1205 (6th Cir.1982), where we said that an arbitral award is binding on the parties, absent the filing of a motion to vacate, modify or correct the award, "[u]nless [the parties] challenge the underlying contract to arbitrate...." *Id.* at 1212. Although the district court did say that certain affirmative defenses had been waived because of the employer's failure to raise them in the original answer, the jurisdictional defense seems to have been excepted from this statement. We are satisfied, in any event, that there was no waiver of the jurisdictional defense.

employer to comply with the board's decision by signing a pre-hire agreement identical to that in effect between the union and the Kentucky Sheet Metal Contractors Association. Dane challenges this order on appeal.[3]

## II

Although pre-hire agreements were formerly deemed to be terminable at will, absent a "conversion" into regular collective bargaining agreement status, current National Labor Relations Board doctrine makes pre-hire agreements binding in accordance with their terms. *John Deklewa & Sons*, 282 N.L.R.B. 1375 (1987), *enforced sub nom. International Assn. of Bridge, Structural & Ornamental Iron Workers Local 3 v. N.L.R.B.*, 843 F.2d 770 (3rd Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988). A union that signs such an agreement enjoys no presumption of majority status, however, and nothing in the National Labor Relations Act prohibits either party from repudiating the § 8(f) relationship effective with the expiration of the contract. *Id.*

Against this background, Dane makes the following argument:

—*Deklewa* teaches that there is no duty to bargain when a pre-hire agreement expires;

—Where there is no duty to bargain, the employer's refusal to bargain cannot create a negotiating "deadlock";

—Under the pre-hire agreement at issue here, the only type of dispute that is subject to interest arbitration is one that arises out of a negotiating deadlock;

—Dane having properly refused to bargain, the expired pre-hire agreement gives the National Joint Adjustment Board no jurisdiction to arbitrate.

Even if the pre-hire agreement did provide for interest arbitration in this situation,

Dane goes on to suggest, the arbitration provision expired with the rest of the agreement—and if there was no longer any agreement to arbitrate, the board no longer had jurisdiction to make an award of any kind. In this connection Dane cites *John S. Griffith Construction Co. v. United Brotherhood of Carpenters & Joiners*, 785 F.2d 706, 712 n. 5 (9th Cir.1986), where the Ninth Circuit quoted *Ion Construction v. District Council of Painters No. 16*, 593 F.Supp. 233, 238 (N.D.Cal.1984), *aff'd* 803 F.2d 1050 (9th Cir.1986), to the effect that "[i]f the Court finds that the employer's repudiation [of a pre-hire agreement] was effective, there is no longer any agreement to arbitrate disputes between the parties."

Neither *Griffith* nor *Ion Construction* dealt directly with the question whether, in light of *Deklewa*, an interest arbitration clause can be given effect subsequent to the agreed expiration date of a § 8(f) agreement. But in *Sheet Metal Workers International Assn. Local 206 v. R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758 (9th Cir.1988), which involved a 1983 Sheet Metal Workers § 8(f) agreement that expired by its terms in 1986, the Ninth Circuit answered that question in the affirmative.

The agreement in *R.K. Burner*, we are told, followed the same standard-form language employed in the agreement at issue in the case at bar. In *R.K. Burner*, as here, the employer relied on *Deklewa* in asserting that once the agreement had expired there could be no duty to arbitrate. The Ninth Circuit rejected this assertion, holding that "interest arbitration clauses survive the expiration of a [§ 8(f) ] collective bargaining agreement." *Id.* 762. The fact that the employer may have had no *statutory* duty to bargain, the Ninth Circuit said, "did not eliminate [the employer's] *contractual* obligations." *Id.* (emphasis supplied). The language of the interest arbitration clause, as the Ninth Circuit interpreted it, obligated the employer to go

---

**3.** Although the judgment finally entered by the district court extended not only to Dane but also to the sister company, which was found to be Dane's *alter ego*, the defendants' subsequent notice of appeal did not specify, in the form required by *Minority Employees v. Tennessee Dep't of Employment Sec.*, 901 F.2d 1327 (6th Cir.) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), that the sister company was a party to the appeal. Dane is thus the only appellant properly before us.

to arbitration, under the circumstances presented, notwithstanding that the rest of the contract might have expired.

The parties in *R.K. Burner* had attempted to reach a voluntary agreement on a new contract, so the Ninth Circuit did not squarely face the question whether the contract imposed a duty to bargain as well as a duty to arbitrate. In *Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc.*, 877 F.2d 547 (7th Cir.1989), however, a case that also involved the standard-form language at issue here, the employer not only refused to arbitrate, but refused to negotiate. Rejecting the employer's argument that there was no duty to negotiate, the Seventh Circuit held that the contract imposed both a duty to negotiate and a duty to accept a settlement imposed by the arbitrators if negotiations failed.

We cannot quarrel with this interpretation of the contract language; Article X, § 8 does seem to embody a requirement that the parties engage in negotiations. It is true, as Dane argues, that "[a]rbitration does not create a bargaining obligation," but the contract itself may create a bargaining obligation, just as the contract may provide for interest arbitration if the bargaining breaks down.

We see nothing to the contrary in *Deklewa*. What the NLRB was concerned with in that case was a statutory duty to bargain, not a contractual duty to bargain. See *Baylor, supra,* where the Seventh Circuit emphasized the importance of this distinction. See also *Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co., Inc.*, 786 F.2d 1459 (11th Cir. 1986), a pre-*Deklewa* case that likewise involved the standard-form language at issue here. Notwithstanding the expiration of the original contract, the *Tampa Sheet Metal* court held that because the contract provided for retroactive application and interest arbitration, the National Joint Adjustment Board had jurisdiction to require the employer to renew the contract and to increase the employees' benefits. *Id.* at 1461.

Dane does not argue that it is inconsistent with the federal labor laws for construction industry employers to be allowed to commit themselves to letting an arbitrator extend and modify contracts with labor organizations that may lack majority employee support. The NLRB has not spoken to the issue in precisely this form, as far as we know, but at least three courts of appeals have held that contracts such as the one involved in this case can require interest arbitration following expiration of the original contract term. We are aware of no decision to the contrary, and we should be reluctant to create an inter-circuit conflict where none now exists. Accordingly, we AFFIRM the judgment of the district court.